UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TOYE TUTIS,                          :              Civ. No. 22-6138 (RMB)
    Movant,                       :
                                  :
      v.                       :
                                  :
                                  :
UNITED STATES OF AMERICA,            :
    Respondent.                   :              Hon. Renée Marie Bumb
                                                 Chief U.S. District Judge

---

UNITED STATES' MEMORANDUM OF LAW IN OPPOSITION
TO 28 U.S.C. § 2255 MOTION

---

                                  PHILIP R. SELLINGER
                                  UNITED STATES ATTORNEY
                                  970 Broad Street
                                  Newark, New Jersey

On the Brief:

Joseph McFarlane
Assistant U.S. Attorney
401 Market Street, 4th Floor
Camden, New Jersey 08101

Dated:  May 24, 2023

## PRELIMINARY STATEMENT

Toye Tutis's motion filed pursuant to 28 U.S.C. § 2255 (the "Motion") should be denied.  His four claims all lack merit and should be rejected.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### Tutis Led A Large-Scale Drug Trafficking Organization

A long-term investigation conducted jointly by federal and local law enforcement officers revealed that Tutis operated a large-scale drug trafficking organization in southern New Jersey distributing kilogram quantities of heroin and cocaine between February 2010 and December 2014. PSR ¶¶32-33.[1] The investigation included, *inter alia*, multiple wiretaps, controlled purchases by confidential sources, and multiple search warrants.

Tutis had several sources of supply for heroin and cocaine including the Mexican Sinaloa cartel via its broker Ivan Cuellar Naranjo. PSR ¶34. Tutis had operations on both the West Coast and the East Coast. As for the West Coast, the Mexican cartel shipped cocaine to California, where Tutis had his associates purchase it in kilogram quantities and ship it to Tutis in New Jersey. PSR ¶¶38-40. During 2012 and 2013, using fake companies and various mailboxes, Tutis shipped cash to California and had cocaine shipped back to him approximately every week. PSR ¶¶38, 39, 43. In September 2013,

---

[1] The Government has submitted the Presentence Investigation Report ("PSR") and Statement of Reasons ("StR") under seal as Exhibits C and D.

Tutis began purchasing kilogram quantities of heroin from the Mexican cartel, which were shipped to New Jersey. PSR ¶42.

On the East Coast, Tutis used various businesses and properties to receive drug shipments, distribute drugs, and launder the proceeds. Tutis and his wife, Jasmin Vega, owned numerous businesses, including Ta'Ja Construction, LLC, Ta'Ja Construction I, LLC, Ta'Ja Real Estate Investors, LLC, Ta'Ja Laundromat, LLC, Dave's Grocery, and Integrity Heating and Cooling, LLC.  PSR ¶¶33 n.3, 44, 50-52.  Ta'Ja Construction had contracts with many local apartment complexes in the Atlantic City area, and Tutis paid apartment complex staff between $500 and $1,000 per package to receive drug packages on his behalf. PSR ¶¶44-48. For example, one manager of an apartment complex received 27 packages of cocaine via UPS between August 2013 and October 2014. PSR ¶45. Tutis's associates also sold drugs out of the apartment complexes. PSR ¶49. Vega operated the Ta'Ja Laundromat, where Tutis's organization kept kilogram quantities of cocaine and drug trafficking proceeds. PSR ¶51. Both the laundromat and Dave's Grocery were used as a meeting place for conspirators to discuss and conduct the drug trafficking business. PSR ¶¶51-52. Tutis also used a stash house in Philadelphia and had large quantities of drugs transported to the Philadelphia area by his associates. PSR ¶¶54-55.

Throughout the investigation, law enforcement officers conducted numerous controlled drug purchases from Tutis's associates, PSR ¶63, and

seized a significant amount of cash and narcotics, PSR ¶66. On one occasion, law enforcement officers seized approximately 10 kilograms of heroin in Pennsylvania while the drugs were in transit to Philadelphia. PSR ¶55. On another occasion, law enforcement officers seized a three-kilogram package of cocaine mailed from California en route to Tutis. PSR ¶65. During the execution of eight search warrants on December 11, 2014 at Tutis's home, car, office, storage units, and the homes of his co-conspirators, law enforcement officers seized firearms, ammunition, bullet proof vests, drugs, drug paraphernalia, and large amounts of cash. PSR ¶67.

To hide their drug trafficking activity, Tutis and his co-conspirators used fraudulent driver's licenses obtained through Tutis's contact at the Department of Motor Vehicles to rent mailboxes and ship packages. PSR ¶¶56-57. Tutis also laundered the proceeds from his drug trafficking with the assistance of Vega, and others, through various means, including by depositing the cash into various bank accounts, purchasing real estate, cars, gift cards, money orders and other assets, buying in and cashing out at casinos in Atlantic City and comingling the drug trafficking proceeds with the proceeds from his other businesses.  PSR ¶¶58-61.  At the time of Tutis's arrest, Ta'Ja Real Estate Investors owned approximately 34 properties in southern New Jersey and the Philadelphia area, all of which had been paid for or had expenses paid from business bank accounts commingled with drug proceeds. PSR ¶50 & n.9.

Procedural History

Charges

As a result of their roles in the drug and money laundering conspiracies, Tutis and eleven other defendants were charged in a Second Superseding Indictment.  ECF No. 339.  Specifically, Tutis was charged with drug trafficking conspiracy, drug distribution, money laundering conspiracy, use of a telephone to further a drug offense, and unlawful possession of firearms by a felon. The Second Superseding Indictment also contained forfeiture allegations including over 30 pieces of real estate. Ten of Tutis's eleven co-defendants, including his wife, pled guilty. PSR ¶¶20, 22-30. Co-defendant Ivan Cuellar Naranjo, the Mexican cartel broker, is a fugitive.

Tutis Pled Guilty On The Eve Of Trial

Eventually, Tutis pled guilty to engaging in a drug trafficking conspiracy (Count One) and a money laundering conspiracy (Count Thirteen). A fulsome history of the plea negotiations and Tutis's post-plea attempts to withdraw his plea, including based on a claim of ineffective assistance of counsel, are set forth in great factual detail in two opinions written by Judge Simandle after factual hearings on two motions, *United States v. Tutis,* 2018 WL 5920623 (D.N.J. Nov. 13, 2018) (ECF No. 556) ("*Tutis I*"), and *United States v. Tutis,* 2019 WL 1894792 (D.N.J. Apr. 26, 2019) (ECF No. 580) ("*Tutis II*").

After most of the charged defendants pled guilty, a trial for Tutis and his wife was scheduled for late October 2016.  At the time, Tutis was

represented by Dennis J. Cogan, Esq. and Christopher D. Warren, Esq., but he wished to be represented instead by J. Michael Farrell. Mr. Farrell was, at that time, under federal indictment on unrelated charges in the District of Maryland. Due to this potential conflict, Chief Judge Simandle[2] held a hearing at which Tutis testified, after which, the Court, satisfied that Tutis knowingly and voluntarily waived his right to conflict-free counsel, granted Tutis's request for his choice of counsel – Mr. Farrell. ECF No. 299; *Tutis I*, 2018 WL 5920623, at *1 n.1.

After the jury was selected, the parties agreed to delay the trial for approximately two weeks so that they could continue plea negotiations.  On October 27, 2016, the Government presented plea agreements to Tutis and Vega that were "packaged," *i.e.*, unless both Tutis and Vega accepted the agreements they would be void. Tutis rejected this plea agreement because it did not preserve his right to appeal suppression issues and he felt it did not preserve sufficient assets from forfeiture. *Tutis I*, 2018 WL 5920623, at *4.

Tutis considered a stipulated trial while plea negotiations between the Government and Vega continued. By October 31, the Government agreed that Vega could enter into a plea agreement even if Tutis did not and, on the evening of October 31, the Government provided new, uncoupled plea

_____

[2] The Honorable Jerome B. Simandle was Chief Judge at the time of this conflict-of-interest hearing and when Tutis pled guilty.  He took senior status on May 3, 2017, *i.e.,* he was no longer Chief Judge when he held hearings related to and authored *Tutis I* and *Tutis II*.  As a result, this memorandum refers to the Honorable Judge Simandle as both "Judge Simandle" and "Chief Judge Simandle," depending on his title at the time.

agreements to both Tutis and Vega.  The next day, Tutis and plea counsel pressed for more concessions in his plea agreement.  *Id.* at *5-6.

As Judge Simandle explained, "[k]nowing that Vega would be worked out, [plea counsel] and Tutis continued to press for, and achieved, a significantly better deal for Tutis," *Id.* at *16, specifically a deal that included a limited appellate waiver and fewer properties subject to forfeiture.  Later that day, November 1, 2016, Tutis accepted a new plea agreement that contained those concessions from the Government.  Notably, this plea agreement did not contain the language that packaged it with Vega's.  *Id.* at *7.

Chief Judge Simandle held a Rule 11 hearing that day and accepted that Tutis's guilty plea was knowing and voluntary.  As Judge Simandle later found, "The Tutis plea colloquy, with Farrell's participation, could scarcely have been more exacting."  *Id.*

Tutis Attempted To Withdraw His Guilty Plea - Twice

Following Tutis's guilty plea, Chief Judge Simandle appointed Stanley O. King, Esq. to serve as temporary standby counsel while Farrell was tried and then convicted in the District of Maryland. ECF No. 427. After Farrell's conviction, Chief Judge Simandle terminated Farrell's representation of Tutis. ECF No. 432. Tutis then attempted to withdraw his plea based on a claim that he failed to realize his plea agreement was unpackaged.  Judge Simandle heard testimony on this issue from Farrell, Vega, and Vega's counsel, Mr. Troy Archie, Esq.  *See Tutis I*, 2018 WL 5920623, at *3.  Tutis declined to

testify at this hearing.  *Id.*  At the hearing, Farrell testified that he believed the pleas were packaged and wrongly informed Tutis about that fact. *Id.* at *9-10.

Judge Simandle, in a lengthy, well-reasoned opinion, denied Tutis's motion to withdraw his plea.  Judge Simandle found Farrell's testimony to be incredible: "Farrell's testimony amounts to a clumsy and unethical attempt by ex-counsel to 'fall on his sword,' albeit a fabricated sword, for the benefit of setting aside a conviction." *Id.* at *10

Judge Simandle also found that Tutis failed to make any proffer of facts casting doubt on his guilt. *Id.* at *12-13.  Quite to the contrary, Tutis's new counsel, Mr. King, "candidly conceded that there is no record evidence that supports Tutis' claim of innocence" or any evidence that cast doubt on "the strength of the evidence against him." *Id.* at *12.  Judge Simandle also rejected Tutis's claim that he failed to understand that his plea was unpackaged and also rejected the argument that Tutis would have rejected the plea if he knew it was unpackaged. *Id.* at *16. Judge Simandle found that "[e]veryone had acknowledged the strength of the evidence Tutis would have confronted at trial consisting of many law enforcement officers, other eyewitnesses, and voluminous electronic surveillance directed against him and other conspirators." *Id.* Judge Simandle continued, holding that "[t]here is no indication in the record that [plea counsel] or Tutis thought they could achieve acquittal at trial." *Id.*

Still unsatisfied, Tutis filed yet *another* motion attempting to void his guilty plea, this time testifying on his own behalf, and arguing that plea counsel was ineffective for failing to explain to him that his plea agreement was unpackaged. Judge Simandle rejected this claim as well. *Tutis II*, 2019 WL 1894792, at *2. He noted that, in the motion, "there is not one word about having a viable defense to the charges or an explanation of why [Tutis's] admissions of factual guilt in 2016 should be disregarded now." *Id.* Notably, Judge Simandle found that Tutis's testimony contained "a litany of lies wherein he said he never read or understood his final plea agreement." *Id.* at *3.

Judge Simandle rejected Tutis's claim under both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984). He found that plea counsel was not ineffective during the plea negotiations, namely because the record showed that plea counsel *did* adequately explain to Tutis that the plea agreement was unpackaged and that "Tutis and [plea counsel] knew exactly what they were doing on November 1st" when Tutis pled guilty. *Id.* at *3-4. Judge Simandle also found that Tutis could not show prejudice under *Strickland*. "The simple facts, as found in [*Tutis I*], revealed that Tutis continuously *rejected* the earlier *packaged* plea agreement offers because he wanted to drive a harder bargain with respect to clawing back some of the forfeited properties and preserving his right to appeal certain suppression motions." *Tutis II*, 2019 WL 1894792, at *5. As Judge Simandle found, "[t]here was no trial strategy then, and there is none

now, by which Tutis would defend against the massive evidence against him at

trial." *Id.*

Sentencing

        Judge Simandle determined that Tutis was a career offender with a

total offense level of 40 and a Criminal History Category of VI, resulting in an

advisory Guidelines range of 360 months to life imprisonment, although the

Government had agreed not to recommend a sentence over 330 months. *See*

ECF No. 398, Tutis Plea Agreement, at 15¶8; StR. Judge Simandle varied

downward and sentenced Tutis to 264 months of imprisonment, well below the

advisory Guidelines range.[3] *See* StR at 4.

Post-Conviction Litigation

        Tutis, represented by CJA-appointed counsel, Stanley O. King,

Esq., appealed, App. Nos. 19-2106, 19-2380, and the Third Circuit affirmed

Judge Simandle's rejection of Tutis's motion to withdraw the plea and his

ineffective assistance of counsel claim, as well as the denial of Tutis's motion to

suppress the wiretap and challenge to the use of the cell site simulator. *United

States v. Tutis*, 845 F. App'x 122, 126-27 (3d Cir. 2021).

        While his appeal was pending, Tutis filed a raft of post-conviction

motions in the District Court, including a motion to prohibit the sale of

forfeited property pending his appeal, a motion for a ruling on his pending

untimely motion for a new trial (despite the fact that he had pled guilty and

---

[3] After sentencing, this case was assigned to Your Honor.

never had a trial), and a motion for recusal of Your Honor, all of which were denied. ECF Nos. 616, 655, 687, 699. Tutis appealed, App. No. 21-1932, and a panel of the Third Circuit summarily affirmed all of this Court's orders. *United States v. Tutis*, 855 F. App'x 74 (Aug. 9, 2021) (per curiam).

On April 26, 2023, Tutis filed a *pro se* notice of appeal, ECF No. 856; App. No. 23-1796, of this Court's April 12, 2023 Opinion and Order denying his sentence reduction motion, ECF No. 831, and related miscellaneous motions, ECF Nos. 806, 816, 829, and 848.

## **LEGAL STANDARD**

Under 28 U.S.C. § 2255, a federal prisoner may move to vacate, set aside, or correct his federal sentencing if: (1) "the sentence was imposed in violation of the Constitution of laws of the United States"; (2) the court lacked "jurisdiction to impose" the sentence; (3) the sentence exceeded "the maximum authorized by law"; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Courts should liberally construe *pro se* § 2255 motions. *United States v. Santarelli*, 929 F.3d 95, 103 (3d Cir. 2019).

Tutis bears the burden of establishing his former counsel's ineffectiveness under *Strickland. See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *United States v. Davies*, 394 F.3d 182, 189 (3d Cir. 2005). To meet that burden, Tutis must satisfy *Strickland's* two-part test. First, Tutis must show that his former counsel's representation was not "within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474

11

U.S. 52, 56 (1985) (internal quotation marks omitted). Second, Tutis must

show "prejudice," *i.e.*, that former counsel's alleged deficiencies "affected the

outcome" of the proceedings. *Id.* at 58-59.

      "To meet *Strickland's* prejudice prong in a plea situation, [Tutis]

must establish that 'counsel's constitutionally ineffective performance affected

the outcome of the plea process.'" *McSwain v. Warren*, 2013 WL 496201, at *6

(D.N.J. Feb. 7, 2013) (quoting *Hill*, 474 U.S. at 59). Tutis "must demonstrate a

reasonable probability that, but for counsel's errors, he would not have pled

guilty at all." *Id.* At the sentencing stage, Tutis has to demonstrate a

reasonable probability that, but for counsel's errors, he would have received a

lesser sentence. *See United States v. Smack*, 347 F.3d 533, 540 (3d Cir. 2003).

The *Strickland* test also applies to claims of ineffective assistance of appellate

counsel. *Robbins*, 528 U.S. at 285. An attorney's decision about which issues

to raise on appeal are strategic, and an attorney is not required to raise every

possible non-frivolous issue on appeal. *Albrecht v. Horn*, 485 F.3d 103, 138 (3d

Cir. 2007). "Surmounting *Strickland's* high bar is never an easy task." *Padilla*

*v. Kentucky*, 559 U.S. 356, 371 (2010).

## **ARGUMENT**

      Tutis's Motion raises four grounds for relief: (1) his plea counsel's

conflict of interest deprived the Court of jurisdiction; (2) ineffective assistance

of counsel at the plea stage; (3) ineffective assistance of counsel at sentencing;

and (4) ineffective assistance of counsel on appeal. All four claims lack merit.

## I.   Ground One, Based on Plea Counsel's Alleged Conflict of Interest, Lacks Merit.

Ground One of the Motion asserts that plea counsel's "'conflict of interest' deprived the district court of jurisdiction to accept [Tutis's] guilty plea."  Motion at 5. This claim fails on the merits.

Ground One fails for three reasons. First, Tutis knowingly and voluntarily waived his right to conflict-free counsel. Second, even if he had not waived, Tutis has failed to show the existence of any actual conflict of interest. Third, even if he had, the law requires him to show an adverse effect caused by that conflict, which Tutis again has failed to do.

"Conflicts arise when counsel's personal interests are inconsistent, diverse or otherwise discordant with those of his client and affect the exercise of his professional judgment on behalf of his client." *United States v. Scarfo*, 41 F.4th 136, 189 (3d Cir. 2022), *cert. denied sub nom. Pelullo v. United States*, 143 S. Ct. 1044 (2023) (citing *G.V.I. v. Zepp*, 748 F.2d 125, 135 (3d Cir. 1984)) (alterations omitted). When there is "a[n actual] conflict *that affected counsel's performance* – as opposed to a mere theoretical division of loyalties" – the defendant need not make a separate showing of prejudice. *Mickens v. Taylor*, 535 U.S. 162, 171 (2002). A defendant alleging an actual conflict must establish that "trial counsel's interest and the defendant's interest diverge[d] with respect to a material factual or legal issue or to a course of action." *Zepp*, 748 F.2d at 136 (alteration in original) (citation and internal quotation marks omitted).

13

"A criminal investigation of counsel, even for crimes unrelated to those being prosecuted in the defendant's trial, can generate an actual conflict when counsel seeks to curry favor with the attorneys prosecuting his client, thus resulting in counsel 'pull[ing] ... his punches.'" *Scarfo*, 41 F.4th at 189 (quoting *Reyes-Vejerano v. United States*, 276 F.3d 94, 99 (1st Cir. 2002)). "Conversely, a lack of evidence that counsel pulled his punches may serve as an indication that he was not 'intimidated by a threat of prosecution' in defending his client. *Id.* (citing *United States v. Montana*, 199 F.3d 947, 949 (7th Cir. 1999)). And where a defendant "show[s] only that his lawyer was under investigation and that the lawyer had some awareness of an investigation" during the defendant's trial, but fails to demonstrate that the lawyer's interests diverged from that of the defendant, beyond "the general and unspecified theory that [the attorney] must have wanted to please the government[,]" he has not demonstrated an actual conflict. *Scarfo*, 41 F.4th at 189 (citing *Reyes-Vejerano*, 276 F.3d at 99).

First, as Chief Judge Simandle found after a hearing on the matter at which Tutis testified, Tutis knowingly and voluntarily waived his right to conflict-free counsel in requesting Mr. Farrell as his counsel of choice. ECF No. 299; *Tutis I*, 2018 WL 5920623, at *1 n.1.  Chief Judge Simandle's handling of this issue below was consistent with the Third Circuit's well settled practice. *See Zepp,* 748 F.2d at 139 ("Normally, the trial court should conduct an evidentiary hearing or factual inquiry to determine whether disqualification is

appropriate and should inquire into the nature of the conflict and the client's awareness of the conflict. The court should also determine whether there has been a waiver of the conflict, whether the waiver was effective or whether a waiver was possible."); *see also United States v. Fumo*, 504 F. Supp. 2d 6, 23-24 (E.D. Pa. 2007). Tutis puts forth no reason why his waiver of any conflict was invalid. As a result, his claim fails.

Second, even assuming Tutis had not knowingly and voluntarily waived any conflict, Tutis has failed to show the existence of any actual conflict of interest. Tutis claims that because his counsel was under criminal indictment, he was, essentially, too busy "to focus" on Tutis's case and neglected his duties to Tutis. Motion at 5. Such a theory, however, does not create a conflict of interest. Tutis has put forth no evidence whatsoever that Farrell either "pulled his punches," *Scarfo*, 41 F.4th at 189, or was too busy or distracted to zealously defend Tutis. Indeed, the record reflects that Farrell went out of his way to assist his client to the point of lying to the Court in an attempt to undermine Tutis's guilty plea. *See Tutis I*, 2018 WL 5920623, at *10 (finding Farrell's testimony on Tutis's behalf "amounts to a clumsy and unethical attempt by ex-counsel to 'fall on his sword,' albeit a fabricated sword, for the benefit of setting aside a conviction"). Moreover, being busy does not create a conflict of interest. *See Cvjeticanin v. United States*, 2022 WL 280185, at *8 (D.N.J. Jan. 31, 2022) (rejecting claim that counsel had "a conflict of

interest due to high caseloads" as "a simple repackaging of his claim that counsel was improperly prepared").

Finally, even assuming Tutis has shown an actual conflict of interest, and even assuming he had not already waived that conflict, that is not the end of the inquiry. As set forth above, Tutis must also show that the conflict adversely affected the lawyer's performance. *See Mickens*, 535 U.S. at 174 (holding that "it was at least necessary, to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance").

Here, Tutis provides no specific facts or arguments to support a conclusion that the alleged conflict adversely affected plea counsel's performance. Instead, Tutis appears to rely on *Johnson v. Zerbst*, 304 U.S. 458 (1938) for the proposition that automatic reversal is required if there is a conflict of interest.  *See* Motion at 5. The Court in *Johnson*, however, did not address conflicts of interest at all, as the issue in that case involved a defendant who had *no* counsel. *See Johnson*, 304 U.S. at 469 ("In this case, petitioner was convicted without enjoying the assistance of counsel."). In any event, the Supreme Court and Third Circuit law discussed above make it clear that a conflict of interest does not result in automatic reversal and that a defendant must make a showing that the conflict caused an adverse effect. *See, e.g., Scarfo*, 41 F.4th at 189. Tutis has failed to make such a showing. *See id.* at 190 (rejecting ineffective assistance of counsel claim based on Farrell's

16

alleged conflict and finding that defendant "sought out Farrell's services precisely because of his aggressive defense style.").

The record reflects that Tutis, "an intelligent, articulate, and self-directed person," clearly wanted Farrell to represent him and was more than satisfied with Farrell's representation. *Tutis I*, 2018 WL 5920623, at *7-8. Moreover, as Judge Simandle found, Tutis was "very involved in his own defense, discussing case law and seeming familiar with the legal concepts." *Id.* Further, Judge Simandle found, "Tutis made up his own mind about decisions with Farrell in plea negotiations." *Id.* Tutis's newfound claim, that Farrell was too distracted by his own criminal indictment to focus on representing Tutis, is simply implausible. In sum, Ground One fails for multiple reasons and should be rejected.

## II. Ground Two, Ineffective Assistance of Counsel at the Plea Stage, Should Be Rejected.

In Ground Two, Tutis asserts a scattershot of reasons why plea counsel was ineffective. His primary argument, that counsel misadvised him regarding the package plea issue, has already been rejected by Judge Simandle after a three-day hearing and by the Third Circuit and so must be rejected again. Tutis's remaining arguments claim that plea counsel failed to conduct a proper investigation. These various allegations fail on the merits.

**A. Tutis's Claim Regarding Ineffectiveness With Respect to the Package Plea Issue Has Already Been Rejected by the Third Circuit.**

In Ground Two, Tutis asserts that plea counsel was ineffective because he failed to properly advise Tutis regarding whether his plea agreement was a package plea. *See* Motion at 6(a). This is the *third* time Tutis has raised a variation of this argument. As discussed above, Tutis attempted to withdraw his plea based on this issue. Tutis obtained new counsel and Judge Simandle heard testimony from plea counsel and others and issued a thorough opinion rejecting this claim. *See Tutis I*, 2018 WL 5920623, at *1, 6.  Tutis then re-raised this issue under a claim of ineffective assistance of counsel, *i.e.*, the *exact same* claim that he asserts in the Motion.  Judge Simandle *again* heard testimony (this time from Tutis himself) and *again* rejected this claim. *See Tutis II*, 2019 WL 1894792, at *5.

Tutis also raised this ineffective assistance of counsel claim on direct appeal, and the Third Circuit rejected the claim. *See United States v. Tutis*, 845 F. App'x 122, 127 (3d Cir. 2021).[4] A § 2255 motion cannot be used to relitigate questions that were raised and answered on direct appeal. *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993). Tutis cites no new facts

---

[4] The Motion incorrectly states that this issue was not raised on appeal.  *See* Motion at 7.

or law that would call into question the Circuit's decision. Accordingly, Tutis's claim based on the package plea issue should be rejected.[5]

### B. Tutis's Various Assertions that Plea Counsel Failed to Investigate All Lack Merit.

In Ground Two, Tutis sets forth multiple reasons why plea counsel was constitutionally ineffective for failing to investigate and/or raise certain issues. *See* Motion at 6, 6(c)-(h). These issues include (1) failure to challenge the drug conspiracy charge; (2) failure to challenge aspects of the money laundering charge; (3) failure to seek suppression; and (4) failure to challenge the calculation of drug quantity.[6] These claims all fail on the merits.

As an initial matter, to succeed on a claim that counsel failed to conduct an adequate investigation, Tutis must show how any uncovered facts would have been favorable and material. *See United States v. Gray*, 878 F.2d 702, 717 (3d Cir. 1989). Defense counsel "is not obligated to chase after the wind" by striving to locate evidence in the hopes that it might turn out favorable. *McSwain*, 2013 WL 496201, at *8. In addition, as noted above, Tutis

---

[5] To the extent the Court wishes to consider the merits of the package plea issue, the Government adopts the thorough analysis of Judge Simandle for why the claim fails on the merits. *See Tutis I*, 2018 WL 5920623, at *5-6, 9-10; *Tutis II*, 2019 WL 1894792, at *1-2.

[6] The Government recognizes that Tutis is proceeding *pro se* and is attempting to interpret and coalesce the various strands of assertions in Ground Two. To the extent the Government misunderstands or misstates any of Tutis's arguments, it will consider seeking permission to submit a sur-reply responding to any clarifications made by Tutis in any reply brief. The Government is also willing to file a supplemental brief if the Court believes it has failed to address any issues.

must show that he would not have pled guilty if counsel had conducted a more thorough factual or legal investigation. *See id.* at *6.  He has failed to do so.

### 1. Conspiracy v. Buyer-Seller Relationships

Tutis claims his plea counsel was ineffective for failure to research the law and facts relating to conspiracy because "[r]ather than a conspiracy, only a Buyer-Seller relationship existed" between him and his co-conspirators. Motion at 6. He also claims, in complete contradiction to this assertion that an "investigation by counsel into the facts of the case would have demonstrated that, assuming the truth of the government's assertions, more than a single conspiracy existed." *Id.* at 6(f).

Tutis's argument that he was merely in a buyer-seller relationship and not a member of a conspiracy is patently absurd and belied by what Judge Simandle alternately referred to as "massive evidence" and a "mountain of evidence." *Tutis II*, 2019 WL 1894792, at *5. Tutis ignores this evidence, points to *no* evidence showing that he was merely a buyer or seller, and provides no explanation for why counsel was ineffective for failing to raise this issue. As discussed above, and as Judge Simandle held more than once, the evidence is overwhelming that Tutis was the leader of a large drug distribution conspiracy.

Tutis's argument that he was a member of multiple conspiracies, rather than just a single one, fares no better. If Tutis is correct that he was a member of multiple drug distribution conspiracies, then how was plea counsel ineffective for advising him to plead guilty to being a member of just one

conspiracy? It is illogical for Tutis to assert that counsel should have advised him to reject the plea because it required him to plead guilty to too few conspiracies.

The cases relied upon by Tutis are unhelpful to him. None of them relate to ineffective assistance of counsel. Nearly all of them relate to *post-trial* issues involving whether the government proved too few or too many conspiracies.[7] Giving Tutis the benefit of the doubt, he appears to be arguing that plea counsel should have advised him to reject the plea because the Government's proofs at trial would have shown multiple conspiracies and thus the Court would have granted an acquittal on the sole conspiracy charge.

This argument is unsupported by any facts. To the contrary, the evidence was overwhelming that Tutis was the *leader* of the charged drug conspiracy. *See* Ex. A, Sentencing Transcript, at 34-37 (Judge Simandle ruling at the sentencing hearing that a four-level enhancement applied because Tutis was a leader of the conspiracy); *see also supra* at pp. 2-4 (setting forth evidence of the drug trafficking conspiracy); PSR ¶¶32-67. This is the evidence that the

---

[7] *See United States v. Fahra*, 643 F. App'x 480, 491 (6th Cir. 2016) (Government failed to prove one unifying sex trafficking conspiracy but instead proved separate conspiracies); *United States v. Jones*, 482 F.3d 60, 73 (2d Cir. 2006) (rejecting claim that defendant should have been charged with one just conspiracy); *United States v. Camiel*, 689 F.2d 31, 35-36 (3d Cir. 1983) (holding that Government failed to prove one unified mail fraud scheme and noting such a charge is distinct from a conspiracy charge); *United States v. Papadakis*, 510 F.2d 287, 295-96 (2d Cir. 1975) (rejecting claim that multiple conspiracies should have been charged as just one). The other case relied on by Tutis involves a double jeopardy challenge that was rejected by the Second Circuit and thus is even further inapposite. *See United States v. Macchia*, 35 F.3d 662, 672 (2d Cir. 1994).

Government would have relied upon at trial. To the extent Tutis participated in other conspiracies, his argument that the Government would have improperly used that evidence at trial to prove the charged drug conspiracy is entirely speculative. Such a speculative argument, unsupported by any facts, is insufficient to satisfy the high bar of *Strickland*. Accordingly, Tutis's contradictory arguments that he was a member of zero or two-plus conspiracies, but not just one, should be rejected. Plea counsel had no constitutional obligation to raise this meritless issue. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

Tutis's claim also fails at the prejudice prong. Tutis never asserts that he would not have pled guilty had his counsel raised this issue. Nor does he explain what he thinks would have happened had plea counsel raised this issue successfully. In theory, plea counsel could have moved *in limine* to keep out evidence that related to solely separate conspiracies. But Tutis fails to identify what that evidence is, nor does he discuss what a trial with the remaining evidence would have looked like. As the record shows, and Judge Simandle held, the evidence against Tutis was overwhelming. Accordingly, Tutis cannot show prejudice.

## 2. Ineffectiveness with Respect to Money Laundering Charge

Tutis claims that plea counsel was ineffective for failing to do factual and legal investigation related to the money laundering charges because

Tutis's "tax returns would have shown that his properties were not purchased with proceeds of drug sales." Motion at 6. Tutis fails to explain this argument further, factually or legally. *See id.* Tutis "cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations . . . ." *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991).

In any event, Tutis's claim fails. Tutis pled guilty to a money laundering conspiracy. There is no requirement in that charge that illicit proceeds were actually laundered, nor any requirement that the proceeds be laundered through any specific property.[8] In other words, even if Tutis is factually correct that his properties were not purchased with tainted proceeds, that does not mean he is not guilty of money laundering conspiracy.

Tutis's claim fails on the facts as well. For example, Tutis's wife and co-conspirator, Vega, admitted that the money laundering conspiracy involved using drug proceeds to purchase multiple properties. *See* ECF 401, Vega's Plea Agreement at 4-9. Tutis was also caught on a wiretap instructing others to pay property taxes with cash obtained from the drug distribution conspiracy. *See* Ex. A, Sentencing Transcript at 56. Accordingly, Tutis's conclusory assertion that no "properties" were purchased with drug proceeds finds no support in the evidence.

---

[8] *See United States v. Conley*, 37 F.3d 970, 976-77 (3d Cir. 1994) (setting forth the elements of a money laundering conspiracy).

It is also worth noting the plea counsel negotiated *successfully* to eliminate multiple properties from the forfeiture provisions of Tutis's plea agreement. *See Tutis I*, 2018 WL 5920623, at *5-6 (setting forth the history of the plea negotiations). Thus, the record is clear that plea counsel had a strong understanding of what properties were subject to forfeiture and effectively negotiated the final plea agreement with an understanding of the law and facts, a plea agreement that was ultimately more favorable to Tutis than earlier versions proposed by the Government.

Finally, Tutis fails to assert that he was prejudiced by this alleged ineffectiveness. He does not claim that he would have rejected the plea agreement and gone to trial if his counsel had shown that certain properties had not been purchased with drug proceeds. As discussed above, such evidence would not be a defense to the money laundering conspiracy.  In sum, Tutis's conclusory claim about money laundering proceeds fails both prongs of *Strickland*.

### 3. Failure to Seek Suppression

Tutis asserts that counsel's "lack of preparation and investigation prevented him from mounting valid arguments supporting his motion to suppress the wiretap orders and recorded conversations." Motion at 6. Tutis also asserts that counsel was ineffective for failing to seek suppression of the evidence found in Tutis's residence. *Id.* at 6(e). The Government will address each in turn.

24

First, plea counsel *did* file motions to suppress the wiretap evidence. ECF No. 322. This motion was denied by Chief Judge Simandle, after holding a *Franks* hearing. *See United States v. Tutis*, 2019 WL 2223794, *2-17 (D.N.J. May 23, 2019) (amplifying prior Oct. 21, 2016 Opinion denying motions to suppress). Tutis reserved the right in his plea agreement to appeal that ruling, which he did, and a panel of the Third Circuit rejected his argument. *See Tutis*, 845 F. App'x at 124-125 ("[T]he affidavit contained sufficient facts to establish probable cause for the roving wiretap."). Tutis points to no evidence or argument that plea counsel should have developed that would have led to a different result. Accordingly, this claim fails both prongs of *Strickland*.

Second, Tutis argues that plea counsel was ineffective for failing to seek suppression of the fruits of the search of Tutis's residence. Tutis suggests that a motion to suppress would have been granted because there was no evidence that the residence was used as "a base of operations, or as a storage place, for illegal drug transactions" and no evidence that drug transactions had occurred there, or drugs stored there.  Motion at 6(e). This argument fails both prongs of *Strickland.*

First, the affidavit in support of the search warrant for Tutis's residence was robust and certainly contained more than enough probable cause to support the search warrant. *See* Ex. B (December 9, 2014 search warrant application and affidavit for Tutis's residence). The application for the search warrant was reviewed and approved by Magistrate Judge Ann Marie

Donio, upon a finding of probable cause. The affidavit for the search warrant, in detail spanning over *seventy pages*, discussed the history of the investigation and the evidence linking Tutis and others to a vast drug trafficking conspiracy. *See id.* Affidavit at 1-77. The affidavit then detailed why there was probable cause to conclude that evidence of the conspiracy would be found at Tutis's residence. *Id.* Affidavit at 78-81. This includes the following facts: (1) on at least two occasions, surveillance showed packages of drugs from California being taken to Tutis's residence; (2) multiple bank accounts connected to the conspiracy had addresses listed as Tutis's residence; and (3) law enforcement intercepted a package of $70,000 in cash that had been sent from the residence. *See id.*

Tutis claims that the affidavit was insufficient because it did not contain allegations of drugs being stored on the premises or operations being run out of the premises. This claim is factually incorrect. As noted above, two packages of drugs were observed being taken into the residence. It is also legally wrong. As the Third Circuit has explained, "[w]hen the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." *United States v. Williams*, 974 F.3d 320, 351 (3d Cir. 2020). "We have long maintained that when a suspect is involved in drug trafficking, on a significant scale or for an extended period of time, it is reasonable to infer that he would store evidence of that illicit activity in his home." *Id.* In sum,

Tutis has failed to show that his counsel was ineffective by failing to seek suppression of the evidence found in Tutis's residence.

Tutis has also failed to show prejudice. As Judge Simandle noted more than once, the evidence against Tutis was overwhelming and he has never explained a viable defense to the charges. *See, e.g., Tutis II*, 2019 WL 1894792, at *5. The evidence uncovered from the search of Tutis's residence, while not insignificant, was just a sliver of the mountain of evidence against him. After all, law enforcement officers seized additional firearms, drugs, and drug paraphernalia, from Tutis's office, car, and storage units. PSR ¶67. In addition, numerous firearms, ammunition, drugs, drug paraphernalia, and large amounts of cash were seized at the residences of his co-conspirators. PSR ¶67. Even if the evidence seized from his residence had been excluded from trial, Tutis cannot show, and has not even asserted, that he would have rejected the plea agreement and gone to trial. Accordingly, he cannot demonstrate prejudice and this claim fails.

### 4. Failure to Challenge the Drug Quantity Calculation

Lastly, Tutis asserts that plea counsel was ineffective for failing to dispute the drug quantity calculation. Presumably, Tutis is asserting that plea counsel was ineffective for failing to advise him that he had a valid challenge to the drug quantity agreed to in the plea agreement. This argument fails both prongs of *Strickland.*

First, despite having stipulated in his plea agreement to a drug quantity of more than 150 kilograms, but less than 450 kilograms of cocaine, ECF 398 at 14¶3(a), Tutis *did* attempt to challenge the drug quantity calculation at sentencing. The Government responded by setting forth a litany of evidence supporting the quantity of 150 to 450 kilograms of cocaine. *See* Ex. A, Sentencing Transcript at 6-17 (citing, *inter alia*, plea agreements of co-conspirators, intercepted shipments, wiretaps, Tutis's proffer statements, purchases by confidential sources, and witness testimony). Ultimately, after a recess during which Tutis spoke to his sentencing counsel, he withdrew his challenge to the drug quantity calculation. *See id.* at 20:8-23.

This aborted challenge at the sentencing phase shows that a similar challenge at the plea phase would have lacked merit and failed. The sole case cited by Tutis in support of his claim is completely off-base.[9] Thus, plea counsel was not constitutionally ineffective for failing to raise this issue. *See Werts*, 228 F.3d at 203 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

In addition, Tutis cannot show prejudice, nor has he even asserted any. It bears repeating that the evidence against Tutis was overwhelming and, as Judge Simandle held, Tutis has never presented a claim of innocence or a viable defense to the charges. Thus, Tutis cannot show that he would have

---

[9] *See United States v. Sepling*, 944 F.3d 138, 148-49 (3d Cir. 2019) (holding that counsel was ineffective for failing to research how methylone, a substance about which he admittedly knew next to nothing, should be treated under the sentencing guidelines).

rejected the plea agreement if he was advised about a viable challenge to the drug quantity set forth in the agreement. This claim therefore fails both prongs of *Strickland* and should be rejected.

### III.   Ground Three, Ineffective Assistance of Counsel at the Sentencing Stage, Should Be Rejected.

In Ground Three of the Motion, Tutis appears to raise five challenges claiming that his sentencing counsel, Mr. King, Esq., was constitutionally ineffective. These grounds are: (1) failure to challenge drug quantity; (2) failure to challenge the firearm enhancement; (3) failure to challenge aspects of the money laundering guidelines; (4) failure to object to Tutis's disproportionate sentence; and (5) failure to invoke the First Step Act. *See* Motion at 8-8(f).  All of these claims can easily be rejected. Because the Government is confident that it can prevail on the "no prejudice" prong of *Strickland*, it has not moved for an order declaring that the attorney-client privilege has been waived so that it can discuss these claims with Mr. King. In the event that the Court disagrees that any ineffectiveness caused no prejudice, we ask that the Court declare the privilege waived so that the Government may speak with Mr. King and then provide further briefing on the ineffectiveness issue.

### 1. Drug Quantity

Tutis argues that his sentencing counsel was ineffective for failing to challenge the drug quantity and related Guidelines enhancement. Motion at 8(a)-(c). This argument fails.

29

First, the drug quantity was agreed to in Tutis's plea agreement. ECF 398 at 14¶3(a). Tutis "essentially argues that his attorney was ineffective for abiding by the terms of the plea agreement when it came time for this Court to impose a sentence. Such conduct cannot be construed as rendering of ineffective assistance of counsel." *Edwards v. United States*, 2010 WL 2179416, at *3 (D.N.J. May 26, 2010). In short, counsel does not violate the Sixth Amendment by following a plea agreement.

Second, Tutis cannot show prejudice. As discussed above, sentencing counsel *did* try to challenge the drug quantity and when faced with the Government's robust proffer as to how the quantity was calculated, Tutis and his counsel withdrew the objection. Therefore, Tutis cannot show, and does not explain how, he suffered prejudice. Any objection to the drug quantity would have been rejected.

The cases relied upon by Tutis are easily distinguished. In *United States v. Rowe*, for example, the issue was whether the Government had proven at *trial* the weight necessary to trigger increased statutory penalties. *See* 919 F.3d 752, 759-60 (3d Cir. 2019). Notably, the defendant in *Rowe* was not charged with conspiracy or a continuous crime. *See id.* In contrast, Tutis here was charged with conspiracy and the issue related solely to the Guidelines range, so the Government only had to prove drug quantity by preponderance of the evidence that Tutis was responsible for drugs that were part of the

conspiracy, a point that he acknowledged at sentencing when he withdrew his objection.

Tutis's reliance on *United States v. Gentry* is also misplaced. In *Gentry*, the court calculated the drug quantity based solely on the PSR, over the defendant's objections. 941 F.3d 767, 788-89 (5th Cir. 2019). Here, in contrast, the Government provided a robust proffer setting forth the basis of the (agreed-upon) drug quantity and submitted exhibits to support the proffer. *See* Ex. A, Sentencing Transcript at 6-17. Tutis did not (and does not now) challenge any of the facts supporting the drug quantity and, in light of this robust evidence, Tutis withdrew his objection. *See id.* at 20:8-23. In sum, Tutis's cases are distinguishable and his claim fails both prongs of *Strickland*.

### 2. Firearms Enhancement

Tutis next argues that sentencing counsel was ineffective for failing to object to the firearms enhancement in the Guidelines calculation. This claim fails both prongs of *Strickland*.

First, again, this two-level enhancement under U.S.S.G. § 2D1.1(b)(1), was agreed upon by the parties in the plea agreement, *see* ECF No. 398 at 14, ¶3(b); PSR ¶148(3)(b). Had sentencing counsel challenged the enhancement at sentencing, he would have been in breach of the plea agreement. Therefore, he was not ineffective for declining to raise this issue. *See Edwards*, 2010 WL 2179416, at *3. In any event, such an objection would

have failed on the merits so Tutis cannot show counsel was ineffective for not raising it and cannot show prejudice.

As the Third Circuit has held, there is a rebuttable presumption that the enhancement applies when the firearm is found in close proximity to drugs or other evidence of drug trafficking. *See United States v. Perez*, 5 F.4th 390, 400 (3d Cir. 2021). This was the case here. During a search of Tutis's residence, law enforcement officers found two loaded firearms, ammunition, over $62,000 in cash, drug and money packaging paraphernalia, a digital scale disguised as a cell phone, a vacuum sealing machine, money packaging kit, and numerous documents pertaining to drug trafficking. PSR ¶67. During the search of Tutis's office, law enforcement officers found a loaded firearm, a Taser, fentanyl and crack. *Id.* Tutis cites to no evidence that would have rebutted this presumption. Moreover, Tutis has not shown, nor asserted, any prejudice because he cannot show that he his sentence would have been affected had this issue been raised.  In short, any attempt to rebut the presumption would have failed and thus this claim fails both prongs of *Strickland*.[10]

---

[10] Tutis also asserts that there was no nexus between the firearms found in the residence and the drug conspiracy, and thus a conviction under 18 U.S.C. § 924(c) would be inappropriate. Motion at 6(e). Tutis did not plead guilty to a 924(c) charge, so that issue is irrelevant. Tutis also argues that a conspiracy offense no longer permits an enhancement for a firearm under 18 U.S.C. § 924(c), citing *United State v. Abreu*, 32 F.4th 271 (3d Cir. 2022). *Abreu* held that conspiracy was not a "crime of violence" that could be a predicate offense under U.S.S.G. § 2K2.1. *Id.* at 278. Tutis's recommended total guidelines range of 42, however, was calculated under U.S.S.G. § 2D1.1, *see* PSR ¶148(3), and

### 3. Money Laundering Guidelines

Tutis next claims that sentencing counsel was ineffective for failing to challenge the amount of money used to calculate the base offense level for the money laundering charge. Motion at 8(d). This claim is baseless for multiple reasons. First, as with the issues raised above, the money laundering Guidelines level of 38 was agreed to in the plea agreement, *see* ECF No. 398 at 14, ¶4(a), PSR ¶148(4)(a), so it was not ineffective for sentencing counsel to abide by it. *See Edwards*, 2010 WL 2179416, at *3. Second, the amount of laundered funds used to calculate the base level for the money laundering offense had no bearing on Tutis's total offense level because his money laundering offense and drug conspiracy offense grouped under U.S.S.G. § 3D1.2(d), *see* PSR ¶¶148(5), 155, and only the offense level for the drug conspiracy offense was used to arrive at the total offense level, *see* U.S.S.G. § 3D1.3(b). Thus, the money laundering count offense level was irrelevant to the total Guidelines range. Third, Tutis never explains what amount of proceeds were mistakenly included as proceeds of money laundering, so he cannot show ineffectiveness or prejudice. In sum, this claim should be rejected.[11]

---

there were no enhancements based on a prior crime of violence. Indeed the only prior crimes which enhanced Tutis's sentence were his two prior controlled substance offenses which rendered him a career offender, resulting in the exact same offense level of 42, and a criminal history category of VI. PSR ¶¶162, 171, 172. (In any event, Judge Simandle found that Tutis's total offense level was 40.) Accordingly, Tutis's § 924(c)-related claims lacks merit.

[11] The cases relied upon by Tutis involve substantive convictions for money

### 4. Failure to Object Based on Disproportionality

Tutis next claims that his counsel was ineffective because he "registered no objection to the sentence imposed . . . through arguing that it was disproportionate to sentences imposed on other similarly situated of[f]enders on a national scale." Motion at 8(e). This argument fails.  First, Tutis's claim ignores the lengthy and detailed argument made by his counsel at sentencing. *See* Ex. A, Sentencing Transcript at 80-89, 93-97. Mr. King's decision to focus on certain arguments in lieu of others is exactly the kind of strategic decision reserved to defense counsel under *Strickland*. It also proved rather effective, as Tutis received a total offense level of 40, StR, two levels lower than that recommended by the Probation Office, PSR ¶164, and ultimately was sentenced 96 months **below** the bottom of his Guideline range. StR.

If anything, Tutis was treated *favorably* compared to similarly situated individuals, as he received a below-guidelines sentence. *See United States v. Kluger*, 722 F.3d 549, 568-69 (3d Cir. 2013) ("[W]ithin-guidelines sentences . . . generally do not lead to disparities requiring that a defendant be granted relief . . . .); *see also Cantatore v. United States*, 2021 WL 5506907, at *9 (D.N.J. Nov. 24, 2021) (rejecting ineffectiveness claim based on alleged by counsel to argue about sentencing disparities). Tutis's claim fails.

---

laundering, not the application of the Sentencing Guidelines. *See* Motion at 8(d)-(e). Accordingly, these cases are inapposite and do not support his claim.

### 5. **First Step Act**

Lastly, Tutis argues that sentencing counsel was ineffective for failure to argue that the First Step Act applied. *See* Motion at 8(f). Tutis is simply wrong that the First Step Act affected any of the penalties that he faced; the mandatory minimum under 21 U.S.C. § 841(b)(1)(A) that Tutis faced was unaffected by the First Step Act, and is still ten years. Tutis is also wrong that the First Step Act changed the base offense level for his crime – Judge Simandle applied the correct version of the Guidelines. Lastly, Tutis's argument that the First Step Act barred the enhancement for the firearm in the Sentencing Guideline is wrong. In sum, Tutis's argument about the First Step Act finds no support in the law and should be rejected.

## IV.    **GROUND FOUR, INEFFECTIVE ASSISTANCE ON APPEAL, SHOULD BE REJECTED.**

In Ground Four of the Motion, Tutis asserts that his appellate counsel, Mr. King, was ineffective for failing to argue on appeal that the Court should not have allowed plea counsel to represent him while Tutis was challenging the validity of the guilty plea and the effectiveness of plea counsel. *See* Motion at 9. This claim fails factually because plea counsel was *not* representing Tutis during his challenges to the guilty plea.

As the docket shows, after Tutis pled guilty on November 1, 2016, the Court appointed new counsel (Mr. King) on a temporary basis on January 10, 2017, pending Mr. Farrell's trial. After Farrell's conviction, Chief Judge Simandle, on February 3, 2017, disqualified Mr. Farrell, and fully appointed

Mr. King to act as counsel for Tutis. ECF No. 432. It was Tutis's new counsel, Mr. King, who then filed the first challenge to the guilty plea on March 15, 2017. ECF No. 443. In short, Tutis is wrong that his plea counsel was representing him during the challenge to the plea agreement, and thus his appellate counsel was not ineffective for failing to raise this issue on appeal. *See Werts*, 228 F.3d at 203 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim."). An appellate attorney's decisions about which issues to raise are strategic, and appellate attorneys are not required to raise every possible non-frivolous issue on appeal, *Albrecht*, 485 F.3d at 138, never mind raising frivolous issues.

In addition, as the appellate record shows, Tutis's appellate counsel ably raised, briefed, and argued several issues on appeal.[12] Appellate counsel challenged Judge Simandle's denial of Tutis's motions to suppress evidence derived from a cell site simulator and a roving state wiretap, the two issues Tutis preserved the right to appeal under his plea agreement. *See* ECF No. 398, at 16-17 ¶9. Appellate counsel's argument was so effective that it caused one Third Circuit Judge to agree with him regarding the wiretap affidavit. *See Tutis*, 845 F. App'x at 127 n.33. Appellate counsel also briefed and argued challenges to Judge Simandle's denials of Tutis's two requests to withdraw his guilty plea. After the Third Circuit panel affirmed Tutis's

---

[12] An audio recording of oral argument before the Circuit on December 9, 2020 can be found here: https://www2.ca3.uscourts.gov/oralargument/audio/19-2106_19-2380_USAv.Tutis.mp3

conviction, appellate counsel went further, filing a petition for panel and *en banc* rehearing, App. No. 21-2106, Dkt. #129, and after that motion was denied, filing a petition for *writ of certiorari* in the U.S. Supreme Court, *id.* at Dkt. #134. In no way was appellate counsel's performance defective.

For this reason, as noted above in Section III, the Government has not sought to discuss these claims of appellate ineffectiveness with Mr. King. Should this Court disagree with the Government's position, we ask that the Court declare the attorney-client privilege waived so that we may speak with Mr. King.

## V.     AN EVIDENTIARY HEARING IS UNNECESSARY.

Tutis has not asked for an evidentiary hearing nor is one necessary.  Where a § 2255 motion "clearly fails to demonstrate either deficiency of counsel's performance or prejudice to the defendant, then the claim does not merit a hearing." *United States v. Dawson*, 857 F.2d 923, 928 (3d Cir. 1988).

As discussed above, Tutis's claim lack merit. In addition, Judge Simandle already held lengthy evidentiary hearings that allowed factual development of many of the claims.  As a result, there is no need for an evidentiary hearing and Tutis has not identified any facts that need to be developed.

## **CONCLUSION**

Tutis's claims for relief all lack merit and should be rejected.

Because Tutis has failed to make a "substantial showing of the denial of a

constitutional right," 28 U.S.C. § 2253(c)(2), this Court should also decline to

issue a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 484

(2000) (certificate should issue only where defendant has shown "that

reasonable jurists would find the district court's assessment of the

constitutional claims debatable or wrong").


Respectfully submitted,


PHILIP R. SELLINGER
United States Attorney


/s/ Joseph McFarlane
By: JOSEPH MCFARLANE
Assistant U.S. Attorney

Dated:  May 24, 2023
Camden, New Jersey

<u>CERTIFICATE OF SERVICE</u>

I certify that on May 24, 2023, I served the United States' Memorandum of Law in Response to Tutis's Motion and the attached proposed form of order via first-class mail on the following:

Toye Tutis, No. 67054-050
FCI-Gilmer
P.O. Box 6000
Glenville, WV 26351


<u>/s/ Joseph McFarlane</u>
JOSEPH MCFARLANE
Assistant U.S. Attorney

Dated:  May 24, 2023

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TOYE TUTIS,                      :        Civ. No. 22-6138 (RMB)
   Movant,                      :
                        :
      v.                         :
                        :
UNITED STATES OF AMERICA,        :
   Respondent.                  :        Hon. Renée Marie Bumb

**<u>ORDER</u>**

     This case having come before this Court on Toye Tutis's Motion under 28

U.S.C. § 2255 to Vacate, Set Aside, or Correct His Sentence; and the United

States having filed a response thereto seeking the denial of the motion; and the

Court having reviewed the submissions of the parties; and for good cause

shown:

     IT IS HEREBY ORDERED, this ___ day of _____, 2023, that Tutis's

motion is DENIED.


                                   HON. RENÉE MARIE BUMB
                                   Chief United States District Judge