

RECEIVED IN
CHAMBERS OF

SEP 18 2023

RENÉE MARIE BUMB, U.S.D.J.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

TOYE TUTIS                                          MOVANT

-VS-                           NO. 22-6138 (RMB)

UNITED STATES OF AMERICA                       RESPONDENT

### MOVANT'S REPLY TO GOVERNMENT'S OPPOSITION TO "MOTION TO VACATE"

On May 24, 2023, the Government filed its opposition, through a "Memorandum of Law", to Toye Tutis's "Motion to Vacate" (28 USC § 2255). The following constitutes the Movant's Reply to that Opposition.

### COUNTER STATEMENT OF FACTS

Contrary to the Government's statement that Toye Tutis distributed kilograms of cocaine and heroin between 2010, and 2014, the actual dates set-forth in the indictment, and the parties Plea Agreement, established that the time period was only between 2012 and 2014. Furthermore, there existed no controlled purchases executed by law enforcement authorities  from Toye Tutis. In fact, officers were unable to corroborate their suspicions through the actual seizure of any controlled substances from Toye Tutis. Thus, the

allegation attributing kilograms of cocaine and heroin to Movant, was derived, exclusively, from sources seeking to eliminate their own respective culpability for drug crimes, or through inferences made from circumstantial evidence.

The Government's admission that Toye Tutis "had several sources of supply for heroin and cocaine", clearly demonstrates that, assuming the truth of the Government's claim that Tutis had engaged in distributing kilogram quantities of heroin and cocaine during the period charged, no nexus existed between those sources of supply. Thus, there existed multiple conspiracies instead of the single conspiracy charged by the indictment. This conclusion is made patent from the proof produced at Movant's sentencing hearing of May 1, 2019. Counsel for the government clearly set-forth, as a basis for attributing the quantities of heroin and cocaine to Tutis during the time period charged, that one Ivan Cuellar Naranjo supplied quantities to Toye Tutis. That individual acted as a broker for the Mexican Sinaloa cartel, and was believed to have supplied Tutis with his product from California. Thus, Ivan Naranjo possessed no connection to Tutis's alleged drug operation in New Jersey other than forwarding controlled substances to Tutis, but only after being paid in advance, thereby reducing their relationship to that of "Buyer/Seller". This is admitted by

the Government in its "Opposition": "During 2012 and 2013, using fake companies and various mailboxes, Tutis shipped cash to California and had cocaine shipped back to him approximately every week." Id. at page 2.

Another individual - Kareem Taylor, assisted Toye Tutis in an alleged theft of ten kilograms from the Cartel. None of the other identified defendants or co-conspirators were associated with that alleged theft. Consequently, it was error to subscribed those ten kilograms to the conspiracy charged by the indictment. Notably, the Government admitted that "it was just Kareem Taylor and Toye Tutis who stole those kilos."

The charged conspiracy could not have included one Phil Horton, since he was in California and merely acted as a Broker by locating and arranging alleged drug purchases for Toye Tutis. Id., at page 26. Phil Horton played no role in distributing controlled substances in New Jersey, nor did he receive benefits or profits from those alleged drug transactions.

Jewell Tutis dealt, exclusively, with "cocaine-base". Thus, since Toye Tutis never distributed cocaine-base, nor was he involved in its manufacture, there was no nexus between Toye Tutis and Jewell Tutis in drug offenses, even

though  they were brothers, and Jewell worked for Toye Tutis
in the latter's construction business, etc.

While Jazmin Vega pled guilty to being a co-conspirator
with Toye Tutis in laundering money, there existed absolutely
no evidence, or suspicion, of her involvement in controlled
substance offenses. Other individuals that were identified by
the Government as being associated with the alleged conspiracy
included Richard Martin, Rashin calk, and Steven Williams. Id.
at page 35. However, their respective roles were never estab-
lished. When there exist no nexus between the customers, then
different conspiracies arise since there is no common goal.
United States v. Swafford, 512 F.3d 833 (6th Cir.2008).

## COUNTER-ARGUMENT

COGNIZABLE ISSUES UNDER 28 USC § 2255

The function of a Motion to Vacate (28 USC § 2255), is to inquire into the legality of the federal prisoner's detention. See Heflin v. United States, 358 US 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detentions: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (20 "that the court was without juris-diction to imposed such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"' and (4) "that the sentence  is otherwise 'subject to collateral attack.'" 28 USC § 2255 (1994).

Once a petitioner files a § 2255 motion, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 USC § 2255(b). When a factual dispute arises in a § 2255 proceeding, an evidentiary hear-ing is required "'to determine the truth of the petition-

er's claims.'" Valentine v. United States, 488 F.3d 325, 333 (6th Cir.2007)(quoting Turner v. United States, 183 F.3d 474, 477 (6th Cir.1999)). A § 2255 Motion requires the district court to either order the government to respond or to hold an evidentiary hearing unless the Motion, fileds and records of the case demonstrate that no relief is warranted. "Under 28 USC § 2255, unless the motion and record as constituted show  conclusively that relief is not available, an evidentiary hearing should be held." 28 USC § 2255(b).

Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him . . . or correct the sentence as may appear appropriate." 28 USC § 2255. The remedy provided in § 2255 is broad and flexible, and entrusts the federal courts with the power to fashion appropriate relief. See Andrews v. United States, 373 U.S. 334, 339 (1963).

Ineffective assistance of counsel claims are cognizable in a § 2255 setting because they are of constitutional dimension. See Kimmelman v. Morrison, 477 U.S. 365, 371-79 and n.3 (1986); Strickland v. Washington, 466 U.S. 668 (1984).

To prevail on a claim of ineffective assistance of counsel, Toye tutis must show that (1) his counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See Kimmelmann, 477 US at 375.

The "reasonableness of counsel's challenged conduct" must be judged "on the facts of the particular case, viewed as of the time of counsel's conduct." Lockhart v. Fretwell, 506 US 364, 371 (1993)(citing Strickland, 466 US at 690). In the course of the latter portion of this inquiry, the Court must consider not merely whether the outcome of the defendant's case would have been different, but also whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair. See Lockhard, 506 US at 368-73. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.: Lockhart, 506 US at 372. Thus, prejudice is measured by current law and not by the law as it existed at the time of the alleged error. Id.

"[I]f a defendant is represented by counsel and pleads guilty upon advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorney in criminal cases." McMann v. Richardson, 397 US 759 (1970). "[T]o prove prejudice, [Tutis] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 841-422. "And, of course,'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the Strickland test." Glover v. United States, 531 US 198, 203 (2001). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." Padilla v. Kentucky, 130 S.Ct. 1473 (2010). "Before deciding whether to plead guilty, a defendant is entitled to 'the effective assistance of competent counsel.'" See Missouri v. Frye, 132 S.ct. 1399 (2012); Lafler v. Cooper 132 S.Ct. 1376 (2012); Premo v. Moore, 131 S.Ct. 733, 743 (2011); Padilla v. Kentucky, 130 S.Ct. 1473, 1480-81 (2010).

In an effort to provide guidance as to how Hill applies to differing factual settings, the Supreme Court decided Lafler and Frye and established a constitutional standard

applicable in all of the separate phases of a criminal trial to which the Sixth Amendment applies, including the point at which a defendant decides whether to plead guilty to a crime.

In the context of sentencing, prejudice means that but for counsel's error(s), acts and/or omissions, his sentence would have been significantly less harsh. See Glover v. United States, 531 US 198, 203-04 (2001)(holding that any increase in actual jail time (even one-day) due to sentencing error is prejudicial).

Toye Tutis was deprived on the effective assistance of counsel, on the following issues:

    A.    Counsel's Failure TO: (1) Communicate with Toye Tutis and Inform Him of the Government's Change to the proposed Plea Agreement which Unbundled the Package Deal between He and His Co-Defendant Spouse, before presenting it to Him for his Signature; (2) File a Suppression Motion challenging the search of the Tutis Residence, and the subsequent seizure of Items not listed on the Search Warrant and which did not constitute evidence of a crime; (3) Conduct An Adequate and Independent Pre-trial Investigation; (4) Properly Inform Toye Tutis of potential Conflicts of Interest that surrounded Counsel's pending criminal Indict-ment; and (5) Failing to Challenge the Single Conspiracy offense through establishing that multiple conspiracies existed between Tutis and his Suppliers, Deprived Toye Tutis of Effective Assistance of Pretrial Counsel Under the Sixth Amendment of the Constitution of the United States, including Due Process; (6) Failing to Mount a Viable Defense to the Money Laundering Count.

1.   Communicate with Toye Tutis and Inform
     Him of the Government's Change to the
     Proposed Plea Agreement which Unbundled
     the Package Deal between He and His Co-
     Defendant Spouse

Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation. It is one of the cornerstones of effective legal representation by an attorney. It is through employment of counsel that a citizen is able to secure for himself all rights reserved to citizens by the Constitution. Otherwise, an ordinary layperson lacks the sophistication required to navigate the landmines which await in a court of law. Absent competent counsel, a citizen will forfeit his liberty through being unable to capitalize on preserving the rights set-forth in the Constitution. Citizens go about their daily lives in the belief that their liberty interests will be protected through licensed attorneys in the event they are haled into court in violation of those rights. It is not the duty and obligation of citizens to insure that license lawyers are competent to represent them when haled into court to face criminal charges involving the potential loss of liberty. Citizens pay taxes to insure that the Judicial Branch of Government insures that only competent and trained attorneys

are allowed to practice in various courts throughout both the State and Federal Governments.

An inherent conflict of interest developed once Toye Tutis's defense counsel was charged with a federal offense by a federal grand jury. At that point, defense counsel ceased any pre-trial investigative efforts and commenced focusing his attention, solely, on obtaining a Plea Agreement from federal prosecutors. "A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceeding' due to failure to [ ] provid[e] Counsel for an accused who is unable to obtain Counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake." Johnson v. Zerbst, 304 US 458 468 (1938). Instantly, defense counsel viewed obtaining a Plea Agreement as a means of circumventing the inherent conflict of interest which arose from his indictment on federal charges. United States v. Sheperd, No. 19-20073, (5th Cir.

In Holland v. Florida, 560 US 631 (2010), the Supreme Court recognized that an attorney's "divided loyalty", or "dishonesty", can constitute a basis for suspending, under the doctrine of equitable tolling, the AEDPA's one-year period for filing a petition pursuant to § 2255. Also, in Koste v. Dormire, 260 F.3d 872, 879 (8th Cir.2001), a

defendant's claim of having been denied the effective assis-
tance of counsel, due to counsel's "conflict of interest",
was found to have been improperly denied by the district
court. Failing to establish prejudice was in contradiction
of Holloway v. Arkansas, 435 US 575 (1976), since prejudice
is not required to be established. The fact that defendant
receives a "fair trial", does not correct a prior consti-
tutional violation. Wanatee v. Ault, 259 F.3d 700, 703
(8th Cir.2001)(attorney "botched" the plea bargaining pro-
cess).

Toye tutis agreed to sign the Plea Agreement only because
defense counsel informed him that the previously tendered Plea
Agreement proposal was identical except for a few minor cor-
rections. Defense counsel represented to Toye Tutis that the
Plea Agreement continued to be a "package deal", involving
his spouse, and co-conspirator, Jazmin Vega. Counsel repre-
sented that the Plea Agreement resolved all charges that were
pending against Jazmin Vega, and contained the sentencing
recommendations laid forth in the prior tendered Plea Agree-
ment. Consequently, Toye Tutis relied on counsel's aforesaid
representations and signed the Plea Agreement.

Misrepresentations to the defendant, by counsel, in

-12-

United States v. Arny, 831 F.3d 725 (6th Cir.2016), in com-
bination with counsel's failure to interview a key witness
for the prosecution, and counsel's failure to investigate or
interview other potential witnesses, resulted in the award of
a new trial. Id. at 731. Counsel had lied to the defendant
regarding the non-existence of a plea deal between the key
witness and the government. The record further showed that no
effort was made by counsel to correct his lies once he became
cognizant thereof, even  if he had made an innocent mistake.
It constituted deficient performance. Id. at 732. Counsel's
conduct was unreasonable and not strategic. Id. It is objec-
tively unreasonable to pursue a trial strategy that does not
require interviewing a witness, especially when the witness
is "known and potentially important". Id. (citing Wiggins v.
Smith, 539 US 510, 527-28 (2003); and Towns v. Smith, 395
F.3d 251, 259 (6th Cir.2005)).

A habeas petitioner's allegations need only amount to a
"colorable claim". Beaty v. Stewart, 303 F.3d 975, 993 (9th
Cir.2002 (citing Townsend v. Sain, 372 US   , 313 (19  )).
Although a hearing was held on this issue before the district
court when Toye Tutis attempted to withdraw his plea, counsel
neglected to argue that plea agreements are to be analyzed
under contract law and that "each party is entitled to receive

-13-

the benefit of his bargain." United States v. Edgell, 914
F.3d 281, 287 (4th Cir.2019). "[A] constant factor is that
when a plea rests in any significant degree on a promise or
agreement of the prosecutor, so that it can be said to be
part of the inducement or consideration, such promise must
be fulfilled." Santobello v. New York, 404 US 257, 262 (1971).
"While the government must be held to the promises it made,
it will not be bound to those it did not make." United
States v. Fentress, 792 F.2d 461, 464 (4th Cir.1986).

Here, the Government made a promise to Toye Tutis that
the plea agreement would be a package deal, including a sen-
tencing recommedation for his spouse, and co-conspirator,
Jazmin Vega. In fact, the written plea agreement that was
initially tendered included a provision governing Jazmin
Vega's sentence. Consequently, Toye Tutis believed that the
Government was fulfilling its promise regarding a package
deal with he and Jazmin vega. Based on defense counsel's
later testimony, prosecutors never alerted him to the fact
that the amended plea agreement was omitting the promised
"package deal". It is elementary that integrated written
contract is merely a representation of the parties oral
agreements, promises or obligations and benefits. "In

determining whether the terms of a plea agreement have been violated,this court must determine whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." United States v. Nelson, 837 F.2d 1519, 1521-22 (11th Cir.1988)(Santobello v. New York, 404 US 257 (1971)). The court must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." In re Arnett, 804 F.2d 1200, 1202-03 (11th Cir.1986). In Arnett, the prosecutor had led defense counsel to believe that their oral understanding limited the government to a maximum forfeiture of amount of $3,000.00, and would prohibit further action against Arnett's properties. When the ensuing written plea agreement document altered the foregoing amount, without notifying counsel of the change, the court held that defendant Arnett and his attorney could reasonably perceive that the written agreement adhered to the parties oral understanding regarding the forfeiture amount.

The decision in Arnett, supra, should have been followed when the terms of Toye Tutis's plea agreement were altered from the parties prior oral agreement without notice to the

Huynh, 884 F.3d 160, 166 (3rd Cir.2018). See, also United States v. Rochelle, 802 Fed.Appx. 41, 44 (3rd Cir.2020), and United States v. Hodge, 412 F.3d 479, 488 (3rd Cir. 2005)(defendant's plea agreement included a package plea agreement with his brother).

Counsel's errors and misadvice in United States v. Bui, 795 F.3d 363 (3rd Cir.2014), allowed issuance of a writ of habeas corpus to set-aside the conviction. The district court's colloquy during plea hearing did not compensate for the misadvice given to the defendant regarding the consequences of the plea, especially the fact that he would be ineligible for the "safety valve" reduction. "If Bui were unable to benefit from a safety valve reduction, he would have gained no benefit from his plea agreement." Id. at 368. The court concluded that "there is a reasonable probability that, but for counsel's errors, Bue would not have pled guilty." Id.

The foregoing judicial decisions clearly demonstrate that Toye Tutis was denied due process through the uninformed change in the terms of the parties oral agreement. Defense counsel was not advised on the change. Therefore, either Toye Tutis was deprived of due process, or of the effective assistance of counsel.

2.    Defense Counsel Provided Ineffective
      Assistance by Failing to File a
      Motion to Suppress the Fruits of the
      Search seized from the Tutis residence

No challenge was mounted by defense counsel to the

search warrant that issued to search the residence of Toye

Tutis, and his family. Law enforcement officers possessed no

information in support of a belief that the residence served

as a storage for controlled substances, or that illegal drug

transactions had occurred at the residence. The sole basis

for requesting a search warrant was a belief that evidence

of illegal drug dealing could be found at the residence be-

cause of a suspicion that Toye Tutis was conspiring to dis-

tribute controlled substances. Omitted from the supporting

affidavit was information pertaining to the various business

activities being engaged in by Toye Tutis, e.g., Construction

Company, Laundromat, Grocery Store, numerous pieces of rental

properties, etc.

Officers conducting the search ignored the "particular-

ity" requirements of the Fourth Amendment. The officers ex-

panded the search beyond the four corners of the search war-

rant by seizing jewelry from the persons residing in the resi-

dence, automobiles, computers, watches, and United States

currency. Significantly, no controlled substances were found

in the residence, nor evidence of illegal drug dealing.

No probable cause existed to support issuance of the state search warrant. Affiant's belief was formed from ane uncorroborated informant's false statements, which informant was not proven to be reliable. In addition, intercepteddtele- phone calls were interpreted by investigating officers as pertaining to drug deals. Consequently, the boilerplate, "bare bones" affidavit lacked sufficient facts of criminal activity to justify a search of the residence. United States v. Weaver, 99 F.3d 1372 (6th Cir.1996). There existed no tactical reason for counsel's inaction in not filing a motion to suppress the fruits of the search of petitione's residence. That failure meets the standard set-forth by the Supreme Court in Kimmelman v. Morrison, 477 US 365, 374 (1986), that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance be- tween defense and prosecution that the trial was rendered un- fair and the verdict rendered suspect."

Setting aside Tutis's guilty plea will permit counsel to seek suppression of the items seized from his residence, then utilized to gain a grand jury indictment. The affidavit used to establish probable cause for the search of the Tutis resi-

-19-

dence mirrors that in <u>United States</u> v. <u>Lester</u>, 184 Fed.Appx. 486, 489-90 (6th Cir.2006), which was ruled insufficient to establish probable cause: "The affidavit presented by Anderson to the magistrate consisted in large part of irrelevant facts that provided no indication whatsoever of illegal activity at Andrew Lester's residence." Continuing, the opinion recites that the affidavit's "factual assertions are entirely devoid of any nexus to Andrew Lester or his property, and do nothing to support the inference 'that Mr. Lester's home was the base of operations for his brother's drug dealing operations.'" <u>Id</u>., at 490. "'The specificity required by the Fourth Amendment is not as to the person against whom the evidence is to be used but rather as to the place to be searched and the thing to be seized.'" <u>Id</u> (quoting Mays v. City of Dayton, 134 F.3d 809, 814 (6th Cir, 1998)). Finding that even though there may have existed evidence of a transfer of drug money at Lester's residence, it failed to establish probable cause that evidence of illegal drug transactions would be discovered at the residence.

     3.    Conduct an Adequate and Independent
            Pre-trial Investigation

"Constitutionally effective counsel must develop trial strategy in the true sense - not what bears a false label of 'strategy' based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." Ramonez v. Berghuis, 490 F.3d 482, 488 (6th Cir.2007). If a claim for ineffective assistance of counsel is brought following a guilty plea, the "prejudice requirement 'focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process.'" Utley v. United States, 2016 U.S.Dist.LEXIS 9995 (E.D.Mich.)(Lawson,J.)(quoting Hill v. Lockhart, 474 US 52, 59 (1985)). "'In other words , . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Id. However, the Supreme Court has explained that "'Hill does not [] provide the sole means for demonstrating prejudice'. . . . [P]rejudice may lie where a petitioner demonstrates that counsel's deficient performance infected his decisionmaking process, and thus undermines confidence in the outcome of the plea process." Rodriguez-Penton v. United States, 905 F.3d

481, 487-88 (6th Cir.2018).

In <u>United States</u> v. <u>Arny</u>, 831 F.3d 725 (6th Cir.2016),
an attorney's conduct during pre-trial proceedings was found
to be unreasonable and not strategic because it is objectively
unreasonable to pursue a trial strategy that does not require
interviewing a witness, despite the fact that the witness is
"known, and potentially important". <u>Id</u>. at 732.(citing Wiggins
v. Smith, 539 US 510, 527-28 (2003)). "Constitutionally effec-
tive counsel must develop trial strategy in the true sense-
not what bears a false label of 'strategy'-based on what in-
vestigation reveals witnesses will actually testify to, not
based on what counsel guesses they might say in the absence of
a full investigation." <u>Ramonez</u> v. <u>Berghuis</u>, 490 F.3d 482, 488
(6th Cir.2007).

Instantly, defense counsel's performance did not meet
the stringent demands set-forth in the preceding opinions, all
to the prejudice of Toye Tutis. Except for counsel's ineffec-
tiveness, no plea would have been entered to the charges, and
a jury trial would have followed.

4.   Properly Inform :Toye Tutis of
     Potential Conflicts of Interest
     that Surrounded Counsel's Pending
     Criminal Indictment

Although Toye Tutis was informed by J. Michael Farrell,
defense counsel, that he had been indicted in federal court
on various charges, he downplayed the significance of the
indictment by representing that the pending charges would
have no impact on his representation of the petitioner. It
was in reliance on counsel's aforesaid representations that
Toye Tutis elected to continue having J. Michael Farrell act
as defense counsel, and not waive the conflict.

In Robertson v. Simpson, 624 F.3d 781 (6th Cir.2010),
the one-year period for filing a motion to vacate under 28
USC § 2255, was deemed suspended due to defense counsel's
use of cocaine, which constituted a criminal offense. The
attorney's criminal violations, which was considered to be
a possible factor in missing the one-year deadline, and,
also, contributed to counsel's mis-advice on legal issues,
constituted "extraordinary circumstances", which entitled
the prisoner to equitable tolling of the one-year limita-
tions period under 28 USC § 2244 (d). A parallel to Toye
Tutis's defense counsel's criminal behavior can be drawn
to the same possible effect. Just as the district court in

-23-

Robertson v. Simpson, supra, failed to make factual findings as to whether counsel's cocaine use affected his ability to file a timely habeas petition. The district court in this proceeding made no inquiry into whether Tutis's defense attorney's criminal offense caused him to deprive petitioner of total loyalty to his defense, or otherwise affected counsel's ability to aggressively defend Toye Tutis. There was no finding as to whether attorney Farrell's criminal indictment resulted in his abandonment of Toye Tutis. See, also, Mitchell v. Mason, 325 F.3d 732, 744 (6th Cir.2003)(the combination of attorney's suspension from practicing law during the month preceding the trial, and attorney's failure to consult with the the defendant prior to trial, constituted a "constructive denial of counsel" under Cronic v. United States, 466 US 248 (1984)).

5.   Failing to Challenge the Single Con-
spiracy offense through establishing
that multiple conspiracies existed
between Tutis and his Suppliers, De-
prived Toye Tutis of Effective Assis-
tance of Pretrial Counsel Under the
Sixth Amendment of the Constitution
of the United States, including a
Denial of Due Process

Assuming that the present litigation would have resulted
in a jury trial, then a viable defense would have been that
the identified individuals who were alleged to be co-conspir-
ators had no nexus to each other, thereby constituting differ-
ent conspiracies. "A district court must issue a multiple con-
spiracies instruction where the evidence supports a finding
that multiple conspiracies existed." United States v. Stockton
349 F.3d 755, 762 (4th Cir.2003). The indictment, and evidence
collected by law enforcement authorities, clearly established
that, if true, then Toye Tutis was distributing different con-
trolled substances, which were acquired from distinct persons
operating in other states or countries. Those persons bore no
relationship to each other, nor were they aware that Toye
Tutis was dealing with other suppliers involving different
drug types. Proceeding to trial would have established facts,
if true, showing that there was not only one overall agreement
between the identified co-conspirators to distribute illegal

drugs, but that each supplier was the subject of a totally different and distinct agreement between he and Toye Tutis, unrelated to Tutis's other suppliers. "[T]he government must produce evidence of 'an agreement to distribute drugs that is distinct from evidence of the agreement to complete the underlying drug deals.'" United States v. Musgraves, 831 F.3d 454, 462 (7th Cir.2016)(quoting United States v. Pulgar 789 F.3d 807, 812 (7th Cir.2015)).

Separate conspiracies exist when each of the conspirators' agreements has its own end, and each constitutes an end in itself. Blumenthal v. United States, 332 US 539, 558-559 (1947). However, if there is "one overall agreement among the various parties to perform different functions in order to carry out the objectives of the conspiracy, the agreement among the parties constitutes a single conspiracy." United States v. Varelli, 407 F.2d 735, 742 (7th Cir.1969). It is the nature and scope of the agreement that is the determinative factor in distinguishing between single and multiple conspiracies." United States v. Towers, 775 F.2d 184, 189 (7th Cir.1985). "The crime of conspiracy focuses on agreements, not groups." United States v. Townsend, 924 F.2d 1385, 1389 (7th Cir.1991). "In essence, the question is what

is the nature of the agreement." <u>United</u> <u>States</u> v. <u>Varelli</u>, 407 F.2d 735, 742 (7th Cir.1969).

It is settled law that drug purchases alone are insufficient to satisfy the agreement element for a conspiracy under 21 USC § 846, yet purchases alone were all the Government possessed to support its allegations. <u>United</u> <u>States</u> v. <u>Goliday</u>, 41 F.4th 778 (7th Cir.2022). Goliday's guilty plea to a drug conspiracy crime was vacated because the district court failed to insure that he understood the elements of a conspiracy charge. If Goliday had been properly advised that being a "wholesale customer of a conspiracy" does not make him a coconspirator "per se", then he would have realized that the Government lacked the evidence to prove beyond a reasonable doubt that he agreed to participate in a joint enterprise with his supplier to engage in some criminal activity other than the individual drug purchases themselves. With that knowledge, there was a reasonable probability that Goliday would have "assessed his strategic position at trial differently," so his substantial rights were affected, the Court determined. <u>Id</u>.

The Court, in <u>Goliday</u>, supra, further ruled that the error impugned the "fairness, integrity, or public reputation of the judicial proceedings". The District Court had failed

-27-

to ensure that Goliday had "real notice of the true nature of the charges against him," which the Supreme Court characterized as "the first and most universally recognized requirement of due process." Id. (quoting Bousley v. United States, 523 US 614 (1998)). Importantly, the Court explained that the District Court's failure to ensure there was an adequate basis for Goliday's guilty plea "means the court may have allowed Goliday to plead guilty to an offense of which he is actually innocent." Id. (quoting United States v. Olano 507 US 725 (1993)).

The court's reasoning in Goliday, supra, applies to Toye Tutis's guilty plea. Looking at the evidence in a light most favorable to the Government depicts that Toye Tutis, alone, engaged in the business of buying or selling controlled substances. No person stood to gain by whatever profit Tutis acquired from a drug transaction. There was no "fronting" of drugs. Tutis was not purchasing drugs from a single source, but multiple individuals. The Government had no proof as to whom Tutis may have delivered controlled substances following his various purchases. The officers were unable to capture Tutis selling drugs in a controlled buy situation. Wiretaps never demonstrated Tutis arranging with anyone to sell drugs. Significantly, there was a total lack

of any evidence establishing that Tutis conspired with any individual to sell illegal drugs and share in the profit. Toye Tutis had no partner, nor was there proof of jointly undertaken criminal activity. Consequently, Toye Tutis was actually innocent of the drug conspiracy offense. Goliday, supra; and United States v. Colon, 549 F.3d 565 (7th Cir. 2008)(rejecting argument that any "wholesale customer of a conspiracy is a co-conspirator per se"). A conspiracy under § 846 requires "evidence of an agreement to commit a crime other than the crime that consists of the sale [of drugs] itself." United States v. Johnson, 592 F.3d 749 (7th Cir. 2010); United States v. Vizcarra-Millan, 15 F.4th 473 (7th Cir.2021).

Assuming this matter had proceeded to a jury trial, it can be concluded from the record that no witness could have established that none of the alleged co-conspirators were partners with Toye Tutis in profiting from drug transactions. Although some evidence may have been produced showing Toye Tutis engaging in a buy-sell transaction with one of the charged co-conspirators, there existed no nexus between the alleged co-conspirators, with none of them being aware of the others' existence. In other words, not a single co-conspirator could have been convicted of the same conspiracy as was

-29-

charged against Toye Tutis. For example, if a person plans
to rob two banks, but with different accomplices, there does
not exist any assumption that the three individuals conspired
together to do so, even when the accomplices are aware of his
partner's plan to rob another bank with a third party. United
States v. Townsend, 924 F.2d 1385, 1392 (7th Cir.1990). A
partial overlap in participants does not create a single con-
spiracy. United States v. Goff, 2010 U.S.App.LEXIS 19532
(6th Cir.). There is no evidence, in the record, of "mutual
dependence and assistance" among Toye Tutis, and the other
charged and uncharged co-conspirators. United States v.
Jackson, 696 F.2d 578, 583 (8th Cir.1982). Thus, there is
no proof to support the existence of a single overall agree-
ment to distribute controlled substances, nor did they share
"a common aim or purpose". United States v. Bertolotti, 529
F.2d 149, 154 (2nd Cir.1975).

The petitioner's defense counsel provided ineffective
assistance by allowing Toye Tutis to plead to the single
conspiracy alleged in the indictment when the proof tended
to show that multiple conspiracies were in existence. A
variance occurred. Kotteakos v. United States, 328 US 750,
755-56 (1946). See United States v. Vichitvongsa, 819 F.3d

260, 273 (6th Cir.2016)(finding multiple conspiracies was
supported by the evidence even though the defendant con-
tended there was but a single conspiracy).

6.   Failing to Mount a Viable Defense to
the Money Laundering Count

Counsel failed to insure that the money laundering
count of the indictment was supported by the evidence. See
United States v. Voigt, 89 F.3d 1050, 1084-88 (3rd Cir.
1996)(setting forth elements of money laundering statute,
and finding that "the district court's forfeiture order,
which is incorporated into Voigt's judgment of conviction
and sentence, cannot stand. Even under the preponderance
standard, the items of jewelry cannot be considered 'trace-
able to' the proceeds of money laundering activity; the
jewelry was purchased with funds from an account into
which money laundering proceeds had been commingled with
other funds, and after numerousintervening deposits and
withdrawals.). A money laundering conviction was vacated in
United States v. Parker, 364 F.3d 934, 948 (8th Cir.2003),
because the money was not reinvested in the scheme, but to
pay living expenses and debts.

The money laundering statute (18 USC § 1956), is not
a continuing offense. United States v. Marshall, 248 F.3d

525, 540 (6th Cir.2001). Where multiple transfers are involved, they must be analyzed individually for a violation of § 1956(a)(2). United States v. Kramer, 73 F.3d 1067, 1072-73 (11th Cir.1996). In an elaborate wire-fraud scheme, each transfer of money must meet the definition of "transaction", from § 1956(c). United States v. Prince, 214 F.3d 740, 750-54 (6th Cir.2000). In Marshall, supra, the source of funds used to purchase a Rolex watch, bracelet, and expensive wine, was found to have no bearing on whether the purchases satisfied the intent prong of § 1956(a)(1)(B)(i), as each transaction constituted a separate violation of § 1956. "We are also of the opinion that a few isolated purchases of wearable or consumable items directly by the wrongdoer is not the type of money-laundering transaction that Congress had in mind when it enacted § 1956(a)(1)(B) (i), especially where the value of the items is relatively small in relation to the amount stolen by the defendant." Id. (citing United States v. Sanders, 928 F.2d 940, 946 n. 3 (10th Cir.1991)). Thus, the court set-aside Marshall's conviction for money laundering based on the Rolex watch transaction, and the bracelet and wine deals. Id. at 542.

The defendant, in United States v. Crosgrove, 637 F.3d

646 (6th. Cir.2011), was convicted of conspiracy to commit promotion money laundering, in violation of § 1956(h), and § 371. It was vacated because the government failed to show that the proceeds involved in the charged transactions represented "profits" of the organization, and not just "gross receipts", as it was required to do since the money laundering and mail fraud charges merged.

Significantly, there was an absence of evidence to support the intent of Toye Tutis on the money laundering counts. Therefore, his commercial transactions constituted money spending, and not money laundering. United States v. Christy, No. 17-3122 (10th Cir.2019). "Congress did not intend for this law to be treated as a 'money spending statute'". Marshall, 248 F.3d at 538 (quoting Sanders, 928 F.2d at 946). "[T]he government must produce more evidence than the simple fact of a retail purchase using illegally obtained money in order to prove the 'intent to disguise' element of § 1956(a)(1)(B)(i)." Id. "The 'most obvious type' of evidence that would support a finding of intent to disguise the proceeds of unlawful activity is 'that of employing a third party in order to conceal the defendant's identity from others.'" Id. at 539 (quoting United States v. Lovett, 964 F.2d 1029, 1034 n.3 (10th Cir.1992)).

There was no evidence, nor did Toye Tutis admit as part of his plea colloquy, to employing a third party, or third parties, to disguise financial transactions. The record contains no proof of Tutis employing "front men" to disguise financial transactions or purchases. Therefore, defense counsel failed to provide effective assistance of counsel on this count or counts of the indictment.

<u>CONCLUSION</u>

Based on the foregoing facts and legal authorities, the Court is requested to set this matter for an evidentiary hearing since Toye Tutis has made a colorable claim of having received effective assistance of counsel, thereby entitling him to an evidentiary  hearing, and appointment of counsel. "Where a petitioner raises a colorable claim to relief, . . we must remand to the district court for an evidentiary hearing." <u>Phillips</u> v. <u>Woodford</u>, 267 F.3d 966, 973 (9th Cir.2001).

Respectfully submitted,

TOYE TUTIS
FCI - Gilmer
P O Box 6000
Glenville, WV   26351

-34-

FCI-Gilmer
P.O. Box 6000
Glenville, WV 26351




CERTIFIED MAIL
7022 2430 0003 5361 5645

RETURN RECEIPT
REQUESTED



Retail

U.S. POSTAGE PAID
FCM LG ENV
GLENVILLE, WV 26351
SEP 15, 2023

UNITED STATES
POSTAL SERVICE®

08102

$0.00

RDC 99

R2305K138759-7




RECEIVED

SEP 18 2023

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

ATTN: Court Clerk (RMB)
Mitchell H. Cohen Federal Courthouse
One John F. Gerry Plaza
4th and Cooper Streets
Camden, NJ 08102

