**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEM VICINAGE**

|  |  |  |
|---|---|---|
| | : | |
| TOYE TUTIS, | : | |
| Petitioner | : | Civ. No. 22-6138 (RMB) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| Respondent | : | |
| | : | |

RENÉE MARIE BUMB, Chief United States District Judge

This matter is before the Court upon Petitioner Toye Tutis' ("Tutis") amended motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 *in re* Criminal Action No. 14-699-1 (RMB)  ("Am. Mot. to Vacate" Dkt. No. 4); the Government's answer (Dkt. No. 12), and Tutis' reply brief ("Reply to Answer" Dkt. No. 18).  Also before the Court are Tutis' motions to supplement his amended motion to vacate, ("First Mot. to Supplement" Dkt. No. 19); ("Second Mot. to Supplement" Dkt. No. 25); the Government's responses in opposition ("Opp'n to First Mot. to Supplement" Dkt. No. 23); ("Opp'n to Second Mot. to Supplement" Dkt. No. 26), and Tutis' replies in support of his motions ("Reply, First Mot. to Supplement" Dkt. No. 24), ("Reply, Second Mot. to Supplement" Dkt. No. 28).

For the reasons discussed below, the Court will grant Tutis' motions to supplement and deny the amended motion to vacate, as supplemented, without an evidentiary hearing.

## I.    BACKGROUND

### A.    Indictment and Pretrial Motions

Tutis was indicted by a grand jury in the District of New Jersey on December 10, 2014, for drug trafficking and money laundering conspiracies. *U.S. v. Tutis*, *et al.*, 14cr699-1 (D.N.J.) ("Crim. No. 14-699-1") (Indictment, Dkt. No. 1.)[1]  At Tutis' arraignment on December 15, 2014, the Honorable Jerome B. Simandle appointed CJA counsel, Stanley O. King, to represent Tutis until he obtained counsel.  *Id.* (CJA Appointment, Dkt. No. 59.)  Dennis J. Cogan, Esq. entered an appearance on behalf of Tutis on December 17, 2014.  *Id.* (Notice of Appearance, Dkt. No. 76.)  At a status conference on April 9, 2015, Christopher Warren, Esq. also appeared on behalf of Tutis.  *Id.* (April 9, 2015, Minute Entry Proceedings, Dkt. No. 141).  On January 19, 2016, Warren filed a motion to suppress wiretap evidence.  *Id.* (Mot. to Suppress, Dkt. No. 234.)  The Court held a hearing on the motion, *id.* (Feb. 26, 2016 Minute Entry Proceedings, Dkt. No. 256) , and denied it on March 8, 2016.  *Id.* (Mar. 8, 2016 Order, Dkt. No. 263.)

On September 14, 2016, Tutis was charged by a second superseding indictment with drug trafficking conspiracy in violation of 21 U.S.C. § 846 (Count 1), drug

---

[1] Unless otherwise indicated, page citations are to the page on the original document.

distribution and possession with intent to distribute in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) (Counts 7-9); money laundering conspiracy in violation of 18 U.S.C. § 1956(h) (Count 13), multiple counts of use of a telephone to further a drug offense in violation of 21 U.S.C. § 843(b) (Counts 21-25); and two counts of unlawful possession of firearms in violation of 18 U.S.C. § 922(g)(1) (Counts 26, 27).  *Id.* (Second Superseding Indictment, Dkt. No. 339.)  Tutis entered a not guilty plea on March 23, 2016.  *Id.* (Minute Entry Proceedings, Dkt. No. 289.)

On June 29, 2016, Chief Judge Simandle held a conflict hearing where Tutis waived a conflict with his newly retained counsel, J. Michael Farrell.  *Id.* (Minute Entry Proceedings, Dkt. No. 299; Substitution of Counsel, Dkt. No. 300.)  On July 29, 2016, Farrell filed an 84-page omnibus motion on Tutis' behalf, including a motion to suppress evidence obtained by electronic means.  *Id.* (Omnibus Mot. Dkt. No. 322.)  The Court held a *Franks* hearing on October 19, 2016, and denied Tutis' motion to suppress.  *Id.* (Minute Entry Proceedings, Dkt. No. 387; Opinion, Dkt. No. 385; Order, Dkt. No. 386; Order, Dkt. No. 388.)

### B.    Plea Agreement

Tutis entered into a plea agreement on November 1, 2016, two weeks after the jury was chosen and five days before trial.  Crim. No. 14-699-1 ("Plea Hearing Tr." at 23, Dkt. No. 429; "Application to Enter Guilty Plea" Dkt. No. 397; Plea Agreement, Dkt. No. 398.)  He pled guilty to Counts 1 and 13 of the Second Superseding

Indictment. *Id.* (Plea Agreement at 1.)  Among other things, the Government agreed to move to dismiss Counts 7-9 and 21- 27 of the Indictment against him.  (*Id.* at 1-2.)

Tutis agreed to stipulate to the following at sentencing:

- Recognition that the U.S. Sentencing Guidelines ("U.S.S.G.") are not binding on the Court; the version of the U.S.S.G. effective November 1, 2015 applies. In this case. The Guideline applicable to Count 1 is U.S.S.G. § 2Dl.1. The Guideline applicable to Count 13 is § 2S1.1.

- The drug conspiracy in Count 1 involved more than 150 but less than 450 kilograms of cocaine and results in a Base Offense Level of 36.  The offense level is increased two levels because Tutis possessed a dangerous weapon within the meaning of § 2D1.1(b)(1).  Tutis was an organizer, leader, manager, or supervisor of the relevant criminal activity pursuant to § 3B1.1(c), resulting in an upward adjustment of two levels.  The Court, at sentencing, will resolve whether the defendant should face a 2, 3 or 4 level upward adjustment for his aggravating role in the drug trafficking conspiracy, pursuant to U.S.S.G.§ 3B1.1.

- The money laundering conspiracy in Count 13 results in a Base Offense Level of 38 pursuant to U.S.S.G. § 2S1.1(a)(l ), because the underlying drug offense involved 150 but less than 450 kilograms of cocaine and Tutis possessed a dangerous weapon.  The base offense level is increased by two levels under § 2S1.l(b)(2)(B) because Tutis will be convicted under 18 U.S.C. 1956.  Tutis agrees that he was an organizer, leader, manager, or supervisor of the relevant criminal activity, and pursuant to U.S.S.G.§ 3B1 .1 (c), results in an upward adjustment of 2 levels.  The Court will resolve at sentencing whether defendant should face a 2, 3 or 4 level upward adjustment for his aggravating role in the money laundering conspiracy, pursuant to U.S.S.G. § 3B1.1(a) and (b).  Counts 1 and 13 "group" pursuant to § 3D1.2(d).

- Pursuant to § 3E1.1(a), a downward adjustment of two levels for acceptance of responsibility is appropriate if acceptance of responsibility continues through the date of sentencing.

- The Court will determine whether Tutis is a Career Offender pursuant to § 4B1.1(b)(1), which would result in a Criminal History Category VI.

- Tutis reserves the right to seek a variance under 18 U.S.C. § 3553(a), but not for a sentence less than 180 months' imprisonment. The Government reserves the right to oppose such variance and agrees not to argue for a sentence of more than 330 months' imprisonment. The parties agree not to argue for any upward or downward departure, adjustment, or variance not otherwise set forth in the plea agreement.

- Tutis reserves his right to appeal the denial of his pretrial motion to suppress evidence obtained by electronic surveillance, as described in the Schedule A stipulations. He also reserves his right to assert ineffective assistance of counsel claims in a motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255.

Crim. No, 14cr699-1 (Plea Agreement, Dkt. No. 398 at 14-17). Chief Judge

Simandle conducted a plea colloquy and accepted the plea agreement on November

1, 2016. *Id.* (Plea Hearing Tr., Dkt. No. 429).

### C.    The Court Appoints New Counsel for Tutis

After entry of Tutis' plea agreement, Farrell was convicted on his pending

charges, which had nothing to do with the present case, but were related to his work

as a criminal defense attorney. *Id.* ("Mar. 9, 2017 Hearing Tr." Dkt. No. 440.) Chief

Judge Simandle held a hearing and appointed Stanley O. King, Esq. to substitute as

counsel for Tutis. *Id.*

### D.    Tutis' Motions to Withdraw Guilty Plea are Denied

On March 15, 2017, Tutis filed a motion to withdraw his guilty plea on the

basis that he believed the plea was part of a "package deal" with his wife's [Jazmin

Vega] plea agreement, and Tutis only entered the plea out of pressure to minimize

his wife's sentence.  Crim. No. 14-699-1, ("First Mot. to Withdraw Guilty Plea" Dkt. No. 443-1 at 4).  Tutis further asserted that Farrell advised him to accept the plea and challenge the acceptance of the plea post-sentencing.  (*Id.* at 5-6.)  Chief Judge Simandle held a hearing on Tutis' motion to withdraw his guilty plea,  *id.* ("June 26, 2017 Hearing Tr." Dkt. No. 492) and denied the motion.  Crim. No. 14-669-1 (Nov. 13, 2018 Opinion, Dkt. No. 556; Nov. 13, 2018 Order, Dkt. No. 557.)

Tutis filed a second motion to withdraw his guilty plea on February 22, 2019. *Id.* ("Second Mot. to Withdraw Guilty Plea" Dkt. No. 568).  The motion was premised on Farrell's ineffective assistance by failing "to realize the Government had excised language from [the] final plea agreement, essentially de-coupling his agreement from his wife's."  *Id.* ("Mem. in Supp. of Second Mot. to Withdraw Guilty Plea" Dkt. No. 568-2 at 4).  Tutis asserted he entered into the plea agreement solely because he thought it would help his wife.  (*Id.* at 5).  The Court denied Tutis' second motion to withdraw his guilty plea.  *Id.* (April 26, 2019 Opinion, Dkt. No. 580; April 26, 2019 Order, Dkt. No. 581).

E.    **The PSR**[2]

Prior to sentencing, the Probation Department prepared Tutis' PSR.  Tutis' base offense level for Count 1 of the Second Superseding Indictment was premised on U.S.S.G. § 3B1.3, as described in the PSR:

> defendants are responsible for all acts and omissions
> committed, aided, abetted, counseled, commanded,

---

[2] The Government filed the PSR under seal.  *See* Docket No. 12-3 ("Sealed PSR"). The Court will cite to the paragraph and page citations on the original document.

> induced, procured, or willfully caused by the defendant
> and in the case of jointly undertaken criminal activity, all
> acts and omissions of others that were within the scope of
> the jointly undertaken criminal activity, in furtherance of
> that criminal activity, and reasonably foreseeable in
> connection with that criminal activity that occurred during
> the commission of the offense of conviction, in preparation
> for that offense, or in the course of attempting to avoid
> detection or responsibility for that offense.

(PSR ¶ 128.)  On Count 1, under U.S.S.G. § 2D1.1(c)(2), Tutis was responsible for

more than 150 kilograms of cocaine but less than 450, and 16 kilograms of heroin,

producing a base offense level of 36.  (*Id.* ¶ 129.)  The base offense level for Count 13

under U.S.S.G. § 2S1.1(a)(1) was 38, derived from the base offense level of the

underlying offense, the drug conspiracy  (*Id.* ¶ 130.)  This included a two-level

increase pursuant to U.S.S.G. § 2D1.1(b)(1) because Tutis possessed a firearm.  (*Id.* ¶

140.)

The Probation Department also recommended a four-level increase under

U.S.S.G. § 3B1.1, aggravating role adjustment, because Tutis was the leader of a

drug trafficking organization consisting of five or more participants and the drug

trafficking organization was otherwise extensive.  (*Id.* ¶¶ 143-44.)  Counts 1 and 13

were grouped pursuant to U.S.S.G. § 3D1.2(d), for Guidelines calculation purposes.

(*Id.* ¶ 155.)  The Probation Department recommended that Tutis should not receive a

two-level deduction for acceptance of responsibility under U.S.S.G. § 3E1.1 because

he filed motions to withdraw his guilty plea.  (*Id.* ¶¶ 153, 163.)  Finally, the offense

level for a career offender was 42.  (*Id.* ¶ 162.)  Tutis was a career offender under

U.S.S.G. § 4B1.1(b) based on two prior felony convictions of a controlled substance

offense:  (1) June 3, 1997, manufacture, distribute, dispense cocaine, Superior Court of New Jersey, Atlantic County, Docket No. 97002496, sentenced on Feb. 4, 2000 to five years imprisonment; and (2) August 3, 1998, manufacture, distribute, dispense cocaine, Superior Court of New Jersey Atlantic County, Docket No. 98003583, sentenced on Feb. 4, 2000 to 30 years imprisonment with a term of parole ineligibility.[3]  (*Id.* ¶¶ 171, 172.)  The sentences for these two state court convictions ran concurrently.  (*Id.*)

The Probation Department found Tutis' total criminal history score was eight, with his criminal history producing a score of six, and two points added under U.S.S.G. § 4A1.1(d) because the instant offense was committed while Tutis was serving a sentence under Superior Court of New Jersey, Atlantic County, Docket No. 98003583.  (*Id.* ¶¶ 173-76.)  The Probation Department found the minimum term of imprisonment on Count 1 was 10 years, with a maximum term of life imprisonment.  (*Id.* ¶ 207.)  On Count 13, the maximum term of imprisonment was 20 years.  (*Id.*)  With a total offense level of 43 and Criminal History Category VI, the Guidelines range was 360 months to life imprisonment.  (*Id.* ¶ 208.)  The Probation Department did not find any factors to warrant a departure from the sentencing Guidelines range.  (*Id.* ¶ 225.)

The Government did not have any Guidelines objections to the PSR. (Addendum to the PSR at 74.)  Tutis raised the following objections:  (1) disputes all

---

[3] Petitioner was resentenced to a 20-year term of imprisonment, with 6 ½ years parole ineligibility and was paroled on June 14, 2006.  PSR ¶ 172.

of the purchase and distribution quantities attributed to him; (2) objects to a four-level increase for leadership of a drug trafficking organization and denies any statements attributed to him from a confidential source; (3) disputes that he is a career offender and contends his criminal history is overstated. (Addendum to the PSR at 74-76.)

### F.    Sentencing

The Court held a sentencing hearing on May 1, 2019. ("Sentencing Tr." Dkt. No. 12-1.) Despite the stipulations in his plea agreement, Tutis questioned the drug weight applicable to him for sentencing purposes. (*Id.* at 4.) After the Government made a robust proffer of evidence in support of the drug weight (*id.* at 5-17), Tutis agreed the Government established, by a preponderance of the evidence, that the applicable drug weight for sentencing was that stated in the plea agreement and the PSR. (*Id.* at 18-22.) The Court found the Government had proffered evidence to establish by a preponderance of the evidence more than the drug weights charged in the conspiracy count. (*Id.* at 18.)

The Court addressed an objection Tutis raised to the PSR, that the greatest offense level for a leadership role under U.S.S.G. § 3B1.1 should be plus two, because he was not a leader but an equal with his conspirators. (*Id.* at 22-23.) As found in the PSR, the Government argued the role adjustment under § U.S.S.G. § 3B1.1(a) should be plus four. (*Id.* at 33-34.) The Court overruled Tutis' objection to the PSR and adopted the plus four finding from the PSR because the conspiracy

involved more than five participants, and Tutis was "at the center of this wheel with respect to so many transactions." (Sentencing Tr. at 34-38.)

The Court next considered whether Tutis should receive two points for acceptance of responsibility under U.S.S.G. § 3E1.1, against the recommendation of the Probation Department  (*Id.* at 38.)  After Tutis testified, the Court determined that he accepted responsibility and awarded two points. (*Id.* at 59-60.)

Finally, Tutis objected to the determination in the PSR that he is a career offender under U.S.S.G. § 4B1.1. (*Id.* at 67-71.)  Tutis' counsel argued that under *Mathis*,[4] the state controlled dangerous substance was required to mirror the federal counterpart in order for the state offense to count as a predicate. (*Id.* at 63.)  Counsel admitted there was no controlling Third Circuit precedent, and he had not obtained the documents from the underlying state offenses to make the determination, but the information might be in the PSR. (*Id.* at 63-64.)  Tutis' counsel also acknowledged that application of the career offender enhancement would not alter the Guidelines range because a Category III or IV criminal history with a base offense level of 40 would still result in a range of 360 months to life imprisonment. (*Id.* at 61-62.)  Nonetheless, the Government argued Tutis' two underlying offenses involving manufacture, distribution and dispensation of cocaine comported with the federal analog, and the Court, after reference to the PSR and conducting a full analysis, agreed. (*Id.* at 64-70.)  Tutis' counsel argued a Category VI criminal history

---

[4] *Mathis v. United States*, 579 U.S. 500 (2016).

overstated his true criminal history based on the age of some of his convictions.  (*Id.* at 71-72.)  The Government argued against a downward departure based on five prior felony convictions, and the seriousness of the immediate prior conviction.  (*Id.* at 75.)  This occurred two years before the beginning of the drug conspiracy alleged in this case.  (*Id.*)  The Court found Category VI criminal history did not overstate Tutis' criminal record.  (*Id.* at 73-77.)

The Court calculated a total offense score of 40, with a Criminal History Category VI and determined the Guidelines range to be 360 months to life imprisonment.  (*Id.* at 78-79.)  Counsel agreed with the calculation, and the Court noted anything upward of a level 38 and Criminal History Category V [39 and IV or 40 and III] would result in a Guidelines range of 360 months to life.  (*Id.* at 79.)  Pursuant to the plea agreement, Tutis reserved only the right to move for a variance not less than a sentence of 180-months imprisonment, and the Government reserved the right to argue for a sentence of no more than 330-months imprisonment.  Crim. No. 14-699-1 (Plea Agreement, Schedule A ¶ 8.)

The Court  considered the factors under 18 U.S.C. § 3553(a) and the Guidelines to determine a just sentence.  (Sentencing Tr. at 80-158.)  Tutis' counsel argued Tutis grew up in an environment where it was hard to escape from a life involving drugs.  (*Id.* at 81.)  Tutis had overcome the odds by establishing himself in a trade and building his own businesses, but he was pulled into the drug trade by his acquaintances.  (*Id.* at 81-82.)  Counsel argued that despite his involvement in the drug trade, Tutis continued to support the community by hiring employees for his

businesses and buying goods for needy children.  (*Id.* at 81-82.)  Given a chance, he could turn his life around.  (*Id.*)  Counsel also pointed to an article from the Sentencing Project, which suggested a long sentence could do more harm than good. (*Id.* at 93-94.)  The Court departed downward from the Guidelines range and imposed an aggregate sentence of 264 months of imprisonment and five years of supervised release.  (*Id.* at 146.)

### G.    Appeal

As these issues were preserved for appeal in the plea agreement, Tutis appealed the denial of his motion to suppress evidence from a roving wiretap and his motion to suppress evidence obtained through a cell-site simulator.  *United States v. Tutis*, 845 F. App'x 122, 124-25 (3d Cir. 2021).  Tutis challenged the finding of probable cause for the roving wiretap order.  *Id.* at 124.  "[A] roving wiretap . . . allows the government to 'intercept[ ] any and all identified telephones used' by an individual."  *Id.* (quoting *United States v. Shannon*, 766 F.3d 346, 349 n.4 (3d Cir. 2014)).  For authorization of a roving wiretap, the affidavit of probable cause must include evidence that the person is "thwarting interception" by law enforcement.    *Id.* (quoting 18 U.S.C. § 2518(11)(b)(ii)).

The Third Circuit held there were sufficient facts in the affidavit to establish probable cause for the roving wiretap.  *Id.* at 124-25.  The affidavit indicated a long-term state and federal investigation of multiple drug-trafficking rings of which Tutis, his wife, and his brother were subjects.  *Id.* at 124.  A confidential informant ("CI")

provided tips that Tutis instructed him on code words to refer to specific drugs. *Id.* at 125. Based on those tips, a subsequent investigation included multiple controlled drug purchases, one in Tutis' presence. *Id.* Finally, the affidavit asserted Tutis obtained fraudulent identifications and used multiple phones to avoid interception by police. *Id.*

Tutis also argued the evidence obtained by search of a cell-site simulator exceeded the scope of the warrant because the warrant referred to the simulator as "equipment." *Id.* The Third Circuit held the search did not exceed the scope of the warrant because it described where the equipment would search and what it would obtain. *Id.* Based on physical surveillance, the equipment would be used in close proximity to Tutis in different geographical locations. *Id.* Although not named, the equipment was described in detail by its function and purpose. *Id.* The warrant described what the equipment would obtain, "Electronic Serial Number (ESN), Mobile Telephone Number (MSISSDN), and International Mobile Subscriber Identification (IMSI) to ascertain the [additional cellular telephone] facility or facilities utilized by Tutis" *Id.* (citation modified).

Tutis also appealed the denial of his first motion to withdraw his guilty plea. *Id.* at 125-26. He argued that he was pressured into accepting the plea agreement because it was packaged with a plea offer for his wife. *Id.* at 126. The Third Circuit denied this claim because Tutis failed to assert his innocence, and the record showed Tutis understood and accepted the terms of the final plea agreement, and it was not coupled with that of his wife. *Id.* Farrell's testimony that he did not inform the district court

of the packaged deal to inject error and serve as a basis for later setting aside the plea, was reasonably found not credible based on Farrell's behavior on the witness stand and the testimony of Vega's attorney, that he knew the pleas were uncoupled in the end and Farrell should have known as well.  *Id.*

Tutis also appealed the denial of his second motion to withdraw his guilty plea, based on a related ineffective assistance of counsel claim, that counsel did not inform him the final plea agreement was uncoupled with his wife's plea offer.  *Id.* at 127. The Third Circuit rejected Tutis' claim for the same reasons the first motion to withdraw was rejected and because "there was no indication that Tutis would have gone to trial if he had not pleaded guilty, much less that he was prejudiced by his lawyer's alleged errors.  *Id.*

## II.    The Motion to Vacate

On November 10, 2022, Petitioner filed an amended motion to vacate, in which he challenged his conviction and sentence in Criminal Action No. 14-699-1 (RMB). (Am. Mot. to Vacate, Dkt. No. 4.)  Tutis raised the following grounds for relief, with subclaims under Grounds 2, 3 and 4:

- Ground 1:  Defense Counsel's "conflict of interest" deprived the District Court of jurisdiction to accept Petitioner's guilty plea;

- Ground 2:  The Petitioner received ineffective assistance of counsel in violation of his due process rights and the Sixth Amendment;

- Ground 3:  Defense counsel provided ineffective assistance of counsel during the sentencing stage of the proceeding; and

- Ground 4: Petitioner was denied his Sixth Amendment right to effective representation on direct appeal from the convictions and sentences.

## A.    Standard of Law

28 U.S.C. § 2255(a) provides a remedy for federal prisoners to vacate, set aside or correct their sentences where the court was without jurisdiction, the sentence was in excess of the maximum under the law or the sentence is otherwise subject to collateral attack. "[T]he court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (citation modified). A district court must hold an evidentiary hearing if the record does not resolve any facts alleged to warrant relief. *United States v. McCoy*, 410 F.3d 124, 134 (3d Cir. 2005) (citation modified).

Ineffective assistance of counsel claims are the typical means of collateral attack on a conviction and sentence. To establish a Sixth Amendment claim of ineffective assistance of counsel, a defendant must show "both that counsel's performance was deficient and that such deficiency prejudiced him" as outlined in *Strickland v. Washington*, 466 U.S. 668, 687–88 (1994). *United States v. Dobbin*, 147 F.4th 333, 340 (3d Cir. 2025). The *Strickland* test applies in the plea context as well as the jury trial. *Id.* (citing Hill v. Lockhart, 474 U.S. 52, 58 (1985)). "[I]n order to satisfy the 'prejudice' requirement [of *Strickland* in the plea context], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474

U.S. at 59.  When *Strickland* is applied at the sentencing phase, "a defendant must demonstrate that, but for his trial attorney's alleged ineffectiveness, he would have likely received a lower sentence." *Dobbin*, 147 F.4th at 340 (citation modified).  If a *Strickland* claim fails as a matter of law, the district court is not required to hold an evidentiary hearing on the motion to vacate.  *Id.*

### B.    Ground 1

In his first ground for relief, Tutis contends his trial counsel's conflict of interest deprived the Court of jurisdiction to accept his guilty plea.  (Am. Mot. to Vacate at 5.) Because his counsel was facing loss of his bar license and imprisonment on federal charges, Tutis now asserts this constituted an "automatic" conflict of interest.  (*Id.*) The pending charge affected counsel's ability to focus on Tutis' interests.  (*Id.*)

The Government opposes relief on Ground 1 for three reasons:  (1) Tutis knowingly and voluntarily waived his right to conflict-free counsel; (2) Tutis failed to show any actual conflict of interest; and (3) even assuming the existence of an actual conflict of interest, Tutis failed to show the conflict caused an adverse effect.  (Answer at 13.)

In reply, Tutis acknowledges that Farrell disclosed his indictment on federal charges, but he asserts Farrell downplayed the impact the charges would have on his representation.  (Reply to Answer at 23.)  Tutis contends the trial court, in the waiver of conflict hearing, failed to inquire whether Farrell's indictment caused him to deprive Tutis of total loyalty and focus on his defense.  (*Id.* at 24.)  Tutis suggests that Farrell stopped investigating a potential defense to the charges and focused on obtaining a

plea agreement "as a means of circumventing the inherent conflict of interest." (*Id.* at 11.)

### 1.    *Standard of Law*

"[W]hen counsel breaches the duty of loyalty to his client by maintaining an actual conflict of interest during the representation[,]" prejudice is presumed under the *Strickland* test. *United States v. Scarfo*, 41 F.4th 136, 189 (3d Cir. 2022), *judgment entered sub nom. United States v. Maxwell*, No. 15-2925, 2023 WL 11282245 (3d Cir. July 17, 2023). An actual conflict of interest is one that "affected counsel's performance – as opposed to a mere theoretical division of loyalties[.]" *Id.* It is a defendant's burden to "establish that trial counsel's interest and the defendant's interest diverge[d] with respect to a material factual or legal issue or to a course of action." *Id.* (citation modified). If there was only a potential for conflict of interest, the defendant has the burden to show the potential conflict caused him prejudice. *Id.* at 191. "[A] district court must" determine "whether or not to allow a waiver of a conflict of interest by a criminal defendant" without the benefit of hindsight. *Wheat v. United States*, 486 U.S. 153, 162 (1988).

### 2.    *Analysis*

Tutis was aware of the potential conflict of interest from the beginning of Farrell's representation and waived the potential conflict at a pretrial hearing where Tutis sought to substitute Farrell as counsel. After the hearing, the District Court explained:

> Defendant Tutis was originally represented by retained counsel, Dennis J. Cogan, Esq. and Christopher D. Warren, Esq. On June 29, 2016, the Court had a hearing upon Defendant Tutis' request to substitute J. Michael Farrell, III, as his new retained attorney, notwithstanding the fact that Farrell was under indictment for unrelated charges in the U.S. District Court for the District of Maryland. Defendant Tutis testified that he was aware of Farrell's charges and of the potential conflict it created by Farrell representing Tutis while being himself under indictment (albeit represented by counsel in Maryland), and the Court granted Tutis' request honoring his choice of counsel, being satisfied that his waiver of conflict-free counsel was knowing and voluntary. [Docket Item 299.] About four months after Farrell entered the case, Tutis entered his plea of guilty on November 1, 2016. Two months after Tutis entered his guilty plea, Farrell's case went to trial in January 2017, and a jury found him guilty of multiple counts, including money laundering, money laundering conspiracy, tampering with official proceedings, and witness tampering. (Tr. 6/23/17 at 149.) Farrell awaited his sentencing scheduled for July 17, 2017, and he expected to go to prison. (*Id.* at 149-50.) When Farrell's case was going to trial, new counsel Stanley O. King, Esq. was appointed pursuant to the Criminal Justice Act on January 3, 2017 as temporary standby counsel [Docket Item 428], and on February 14, 2017 as plenary counsel [Docket Item 435], when, at a hearing, the Court also disqualified Farrell due to his felony convictions.

*United States v. Tutis*, No. 14-699-1 (JBS), 2018 WL 5920623, at *1, n. 1. (D.N.J. Nov. 13, 2018), *aff'd*, 845 F. App'x 122 (3d Cir. 2021). During Farrell's representation, Tutis never claimed Farrell's loyalties were divided or that Farrell was too distracted to provide Tutis with an aggressive defense. After challenging the admission of evidence gained through electronic surveillance, Farrell procured the final plea deal on the eve of trial, after selection of the jury. In his plea colloquy, which occurred two months

before Farrell's case went to trial, Tutis confirmed under penalty of perjury that he had enough time with Farrell to come to a decision, he had good communications with Farrell, and he was satisfied with Farrell's services and efforts on his behalf. (Plea Hearing Tr. at 17-19.)

Tutis has not shown that he had an actual conflict of interest with Farrell. He relies on conjecture that counsel could not provide total loyalty or aggressively defend him. To succeed on this claim, Tutis must show a material factual issue, legal issue or course of action where his interest diverged from that of Farrell. "The mere possibility of conflicting interests is insufficient to establish a constitutional violation." *United States v. Meehan*, 741 F. App'x 864, 873 (3d Cir. 2018). Tutis failed to make such a showing. Therefore, the conflict was only potential, not actual.

When a conflict is potential rather than actual, to establish a Sixth Amendment ineffective assistance of counsel claim, a defendant is required to show the potential conflict caused him prejudice. *Scarfo*, 41 F.4th at 191. Prejudice requires a showing that but for the conflict there was a reasonable probability the result of the proceeding would have been different. *Id.* Such a claim is not consistent with the record. After filing a motion to suppress the evidence obtained by electronic surveillance, which was ultimately denied after a hearing before the Court, Farrell, on the eve of trial, obtained a negotiated plea agreement in a case where the Government had acquired hundreds of recorded conversations of an extensive drug trafficking operation led by Tutis. Not only did Tutis waive conflict-free counsel at the outset, he acknowledged his satisfaction and voluntary acceptance of the plea agreement under oath. *See, e.g., Moss*

*v. United States*, 323 F.3d 445, 469 (6th Cir. 2003) (rejecting conflict of interest claim where the petitioner failed to provide specific and credible evidence linking attorney error to the conflict of interest.)   There is nothing in the record supporting Tutis' conjecture that the plea agreement was linked to Farrell's distraction by his own legal problems.   For these reasons, the Court will deny relief on Ground 1.

### C.    Ground 2

Tutis' second ground for relief contains several ineffective assistance of plea counsel claims, each of which will be addressed separately.

### 1.    Standard of Law

The Sixth Amendment requires counsel to provide "reasonably effective assistance" which is measured by prevailing professional norms.  *Strickland*, 466 U.S. at 687-88.  Thus, counsel must perform with sufficient "skill and knowledge as will render the [proceeding] a reliable adversarial testing process."  *Id.* at 688.  In assessing ineffective assistance of counsel claims, courts begin with a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  To succeed on a Sixth Amendment ineffective assistance of counsel claim, a defendant must show counsel's performance fell below that of reasonable professional judgment.  *Id.* at 689.

It is also a defendant's burden to establish prejudice.  *Id.* at 687.  Where the alleged deficient performance of counsel is failure to investigate the facts prior to recommendation of a guilty plea, "whether the error 'prejudiced' the defendant by

causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59.

2.    *Ground 2(a): Counsel failed to investigate the facts and law concerning the drug conspiracy charge*

a.    *The parties' arguments*

Tutis contends that if Farrell had investigated the facts alleged by the Government, he would not have advised Tutis to plead guilty to a drug conspiracy because more than a single conspiracy existed.  (Am. Mot. to Vacate at 6(g)). Relatedly, Tutis argues his drug trafficking involved nothing more than buyer-seller relationships.  (*Id.* at 6.)

The Government responds that Tutis failed to explain how plea counsel was ineffective if Tutis was in fact guilty of more than one conspiracy.  (Answer at 20-21.) Even assuming Tutis' claim is that the Government could not prove the sole conspiracy charge because Tutis was only involved in various buyer-seller relationships, the Government points to:  (1) Chief Judge Simandle's finding at sentencing of overwhelming evidence that Tutis was the leader of the charged drug conspiracy (Sentencing Tr. at 34-37); and (2) information obtained from the investigation and submitted to the Probation Department (PSR ¶¶ 32-67).  (Answer at 21.)  This is the evidence that the Government would have relied upon at trial to prove the drug trafficking conspiracy.  (*Id.* at 21-22.)

In reply, Tutis argues:

21

> looking at the evidence in a light most favorable to the
> Government depicts that Toye Tutis, alone, engaged in the
> business of buying or selling controlled substances. No
> person stood to gain by whatever profit Tutis acquired
> from a drug transaction. There was no "fronting" of drugs.
> Tutis was not purchasing drugs from a single source, but
> multiple individuals. The Government had no proof as to
> whom Tutis may have delivered controlled substances
> following his various purchases. The officers were unable
> to capture Tutis selling drugs in a controlled buy situation.
> Wiretaps never demonstrated Tutis arranging with anyone
> to sell drugs. Significantly, there was a total lack of any
> evidence establishing that Tutis conspired with any
> individual to sell illegal drugs and share in the profit. Toye
> Tutis had no partner, nor was there proof of jointly
> undertaken criminal activity. Consequently, Toye Tutis
> was actually innocent of the drug conspiracy offense.

(Reply to Answer at 28-29.)

### b.    Analysis

The record does not support Tutis' characterization of the Government's

evidence.  In support of the Court's acceptance of the plea, Farrell stated that he

advised Tutis of the evidence that the Government furnished to him and would seek

to use against him at trial.  Crim. No. 14-699-1 (Plea Hearing Tr. at 14).  Farrell

affirmed it was in Tutis' best interest to accept the plea offer.  (*Id.* at 16-17.)  In giving

up his right to a jury trial, Tutis acknowledged that he was waiving his right to have

the Government prove his guilt to all twelve jurors.  (*Id.* at 22.)  Tutis also

acknowledged that his guilty plea was a factual admission of his guilt.  (*Id.* at 24-25,

34-39.)  The prosecutor represented that if the case had gone to trial, the Government

was prepared to prove each essential element of Counts 1 and 13.  (*Id.* at 40.)

Furthermore, the United States Attorney's Office and the FBI provided the

Probation Department with information from the investigation that led to the charges in the Second Superseding Indictment.  (PSR ¶¶ 31-126.)

"In drug conspiracy cases, the government must prove that the defendants were not merely engaged in 'buyer-seller' relationships with their suppliers."  *United States v. Bailey*, 840 F.3d 99, 108 (3d Cir. 2016).  The Government must prove the defendant was an actual member of a conspiracy, which can be shown by evidence including but not limited to:

> (1) the length of affiliation between the defendant and the conspiracy; (2) whether there is an established method of payment; (3) the extent to which transactions are standardized; (4) whether there is a demonstrated level of mutual trust; (5) whether transactions involved large amounts of drugs; and (6) whether the defendant purchased his drugs on credit.

*Id.* at 108 (citation modified).  In addition, the Government must show the buyer/seller has a stake in the larger conspiracy beyond the buyer-seller relationship.  *Id.*

There is evidence that Tutis had a stake in keeping the organization running without law enforcement discovering the nature of the conspirators' activities.  This involved the use of multiple cell phones, code words to disguise drug transactions, disguising large cash payments and drug deliveries, and money laundering.  Based on its investigation, the Government described the Tutis drug trafficking organization as a large scale enterprise lasting for years:

> operating from February 2010 through December 10, 2014, in which kilogram quantities of heroin and cocaine were being shipped from California, Puerto Rico, and

23

New York, and sold in New Jersey. Participants in the
drug trafficking organizations (herein "DTO") profited
from the commission of drug trafficking offenses; used
property in furtherance of trafficking cocaine, cocaine
base, and heroin; possessed firearms in furtherance of the
conspiracy; laundered drug trafficking funds through local
businesses and personal bank accounts; and used
communication devices to facilitate the conspiracy. Note is
made that although heroin and cocaine were shipped
regularly to the southern New Jersey area, cocaine base
was not. It was produced locally from the cocaine that was
shipped.

(PSR ¶ 32.)

The Government provided evidence obtained from its investigation, including

wiretaps on telephones known to be used by members of the conspiracy from

November 21, 2013 through April 26, 2014, law enforcement surveillance,

confidential sources, controlled purchases, seizures of drugs, currency and firearms,

and business and bank records.  (PSR ¶¶ 36-37, 46, 49, 52, 56, 58, 59, 60, 61, 63, 65,

66, 70, 87, 91.)  The following co-defendants pled guilty to Count 1 prior to Tutis'

guilty plea, which required each of them to provide a factual basis for their pleas:

Kareem Taylor, Franciso Roberto Rascon-Muracami, Philip Horton, Talib Tiller,

Ronald Douglas Byrd and John Wellman.  (*see* PSR ¶¶ 19, 22-30.)

When Tutis initially objected to the drug quantity attributed to him at

sentencing, the Government reviewed its evidence of Tutis' drug trafficking

organization.  (Sentencing Tr. at 6-17.)  Of note, the Government cited to the guilty

pleas of codefendants Kareem Taylor and Phil Horton for conspiring with Tutis in

the drug trafficking conspiracy alleged in Count 1. (*Id.* at 6.)  Tutis withdrew his

24

objection at sentencing to the drug quantities involved, upon his understanding that the drug quantities were attributed to the "weight of the conspiracy" not solely to him. (*Id.* at 20.)  In addition, Chief Judge Simandle cited to the following evidence supporting his conclusion that Tutis was the leader of a drug trafficking conspiracy involving at least five participants and lasting over a course of years:  (1) Tutis received the largest share of the profits due to his role; (2) Tutis recruited, supervised and directed others in the drug transactions and money laundering, and (3) it was a successful conspiracy that made millions of dollars.  (*Id.* at 34-36.)

Based on the record, and contrary to Tutis' claim that the evidence established nothing more than a buyer-seller relationship in which he was the sole alleged conspirator to profit, the Government had substantial evidence in support of a drug trafficking conspiracy led by Tutis under Count 1.  Therefore, Farrell exercised reasonable professional judgment in recommending that Tutis plead guilty.  Tutis has not met his burden to establish ineffective assistance of counsel in Ground 2(a), and the Court will deny relief.

> 3. *Ground 2(b):  Tutis' tax returns would have shown his properties were not purchased with proceeds of drug sales.*

> a. *The parties' arguments*

Tutis' sole argument in Ground 2(b) is that his tax returns would have shown his properties were not purchased with drug proceeds.  (Am. Mot. to Vacate at 6.)  The Government submits this conclusory allegation fails to state an ineffective assistance of counsel claim.  (Answer at 23.)  Nonetheless, the Government argues

the offense does not require proof that the drug profits were actually laundered or that they were laundered through any specific property. (*Id.*)

In reply, Tutis contends his counsel failed to determine that the money laundering charge was supported by evidence. (Reply to Answer at 31.) He submits there was no evidence of his intent. (*Id.* at 33.) Without such evidence, his "commercial transactions constituted money sending, and not money laundering." (*Id.* citing *United States v. Christy*, 916 F.3d 814 (10th Cir. 2019)). He further argues that money laundering is not a continuing offense. (*Id.* at 31.) Therefore, each transfer must constitute a separate violation. (*Id.* at 32.) The Government lacked proof, he contends, that he intended to disguise the proceeds of unlawful activity by employing a third party to disguise the financial transactions. (*Id.* at 34.) Instead, the Government produced evidence solely of retail purchases using illegally obtained money. (*Id.* at 33.) Tutis argues that he did not admit in his plea colloquy to employing a third party to disguise financial transactions. (*Id.* at 34) Therefore, Farrell provided ineffective assistance by recommending that he plead guilty to the money laundering conspiracy alleged in Count 13. (*Id.*)

> ### b.    *Analysis*

The elements of money laundering conspiracy in violation of 18 U.S.C. § 1956, as charged in Count 13 of the Second Superseding Indictment, "are: (1) that an agreement was formed between two or more persons; and (2) that the defendant knowingly became a member of the conspiracy." *United States v. Greenidge*, 495 F.3d

85, 100 (3d Cir. 2007).  The substantive crime Tutis was charged with conspiring to

commit provides that:

> (a)(1) Whoever, knowing that the property involved in a
> financial transaction represents the proceeds of some form
> of unlawful activity, conducts or attempts to conduct such
> a financial transaction which in fact involves the proceeds
> of specified unlawful activity—
>
> (A)(i) with the intent to promote the carrying on of
> specified unlawful activity; . . .
>
> (B) knowing that the transaction is designed in whole or in
> part—
>
> (i) to conceal or disguise the nature, the location, the
> source, the ownership, or the control of the proceeds of
> specified unlawful activity; or
>
> (ii) to avoid a transaction reporting requirement under
> State or Federal law.

18 U.S.C. § 1956(a)(1)(A)(1), (a)(1)(B)(i) and (a)(1)(B)(ii).  "The agreement must be

one that, if completed, would satisfy the elements of the underlying substantive

offense."  *United States v. Womack*, No. 24-2263, 2025 WL 1879523, at *3 (3d Cir.

July 8, 2025) (citation modified).

The Government had evidence that Tutis formed an agreement with his wife,

Vega, to launder the ill-gotten proceeds of Tutis' drug trafficking operation.  That

evidence included:  (1) Tutis' and Vega's guilty pleas; (2) calls intercepted by wiretap,

drug and currency seizures, and bank and business records of deposits and checks,

sufficient to establish Tutis and Vega commingled drug trafficking proceeds with

their legitimate businesses in a manner intended to disguise the illegal proceeds from

law enforcement, and Tutis and Vega used those commingled proceeds to both pay employees and purchase property and luxury items for themselves. (PSR ¶¶ 58-62.) Farrell advised the Court he believed that it was in Tutis' best interest to plead guilty. Crim. No. 14-699-1 (Plea Hearing Tr. at 14). He also confirmed that he advised Tutis of the evidence the Government furnished to him and would seek to use against him at trial. (*Id.*)

The Government was not required to separately prove each element of the underlying money laundering offense to establish the conspiracy charge. The "basic idea of conspiracy . . . makes a defendant liable for the acts of his coconspirators so long as there is an agreement . . . combined with intent to commit an unlawful act, combined with intent to commit the underlying offense." *United States v. Catarro*, 746 F. App'x 110, 114 (3d Cir. 2018) (citation modified). The Government had sufficient evidence upon which Farrell, in the exercise of professional judgment, could reasonably recommend that Tutis plead guilty to Count 13. Therefore, the Court will deny relief on Ground 2(b).

> ### 4. Ground 2(c): Counsel failed to mount valid arguments in support of the motions to suppress wiretap orders and recorded conversations

Tutis asserts that counsel's "lack of preparation and investigation prevented him from mounting valid arguments supporting his motion to suppress the wiretap orders and recorded conversations." (Am. Mot. to Vacate at 6.) The Government responds that counsel filed a motion to suppress the wiretap evidence. (Answer at 25, citing Crim. No. 14-699-1, ECF No. 322.) Chief Judge Simandle held a *Franks*

28

hearing and denied the motion.  (*Id.,* citing *United States v. Tutis*, Crim. No. 14-699-1, 2019 WL 2223794, *2-17 (D.N.J. May 23, 2019)).  Tutis appealed, and a panel of the Third Circuit rejected his argument.  (*Id.*, citing *Tutis*, 845 F. App'x at 124-125) ("[T]he affidavit contained sufficient facts to establish probable cause for the roving wiretap."))  Therefore, the Government submits that Tutis failed to establish either prong of ineffective assistance of counsel under *Strickland*.  (*Id.* at 27.)  Tutis did not elaborate on this claim in his reply brief.

Tutis does not prevail on his ineffective assistance of counsel claim because he has not set forth an argument his counsel should have raised, in the exercise of professional judgment, that would likely have resulted in suppression of the recorded conversations obtained from wiretaps.  The Court will deny relief on Ground 2(c).

### 5.    *Ground 2(d):  Counsel misrepresented the plea offer*

Tutis contends that Farrell misrepresented the terms of the plea agreement, leading Tutis to believe there was a plea package in which his wife was a party, and would result in relieving her from criminal liability or a lengthier sentence.  (Am. Mot. to Vacate at 6(a)).  He submits that the package plea offer was the sole basis he agreed, and lacking such consideration, the plea agreement is void.  (*Id.* at 6(a), (b)). Thus, he concludes "[i]t constituted ineffective assistance of counsel not to insure that the plea agreement included the government's disposition of the charge against Jazmin Vega, thereby making it a package, or coupled agreement."  (*Id.* at 6(b)).

The Government maintains that a motion to vacate cannot be used to relitigate questions that were raised and answered on direct appeal.  (Answer at 18,

citing *United States v. DeRewal*, 10 F.3d 100, 105 n.4 (3d Cir. 1993)).  The Third

Circuit rejected this same ineffective assistance of counsel claim on direct appeal.

(*Id.*, citing *Tutis*, 845 F. App'x at 127).

      In reply, Tutis asserts that he agreed to sign the plea agreement:

> only because defense counsel informed him that the
> previously tendered Plea Agreement proposal was
> identical except for a few minor corrections. Defense
> counsel represented . . . that the Plea Agreement continued
> to be a 'package deal', involving his spouse, and co-
> conspirator, Jazmin Vega. Counsel represented that the
> Plea Agreement resolved all charges that were pending
> against Jazmin Vega, and contained the sentencing
> recommendations laid forth in the prior tendered Plea
> Agreement. Consequently, Toye Tutis relied on counsel's
> aforesaid representations and signed the Plea Agreement.

(Reply to Answer at 12.)

      On appeal, Tutis raised his claim that Farrell misrepresented that the plea

agreement was a package deal with Vega.  The Third Circuit held that Tutis' and his

wife's plea agreement did not contain "coupling language," were entered

independently, Tutis affirmed his knowing and voluntary acceptance of the plea, and

the District Court found Tutis to be "an intelligent, articulate, and self-directed

person who was actively involved in negotiating plea offers."  *Tutis*, 845 F. App'x at

126.  Furthermore, the Third Circuit considered Farrell's testimony that he decided

not to tell the Court about the packaged deal to inject error and serve as a basis for

setting the plea aside.  *Id.*  The Third Circuit affirmed the District Court's findings

that Farrell's testimony was not credible.  *Id.*  Finally, the Third Circuit noted Vega's

attorney testified that he knew the plea agreements were not coupled and Farrell should have known this as well. *Id.*

Tutis may not relitigate this ineffective assistance of counsel claim, which was denied on direct appeal, in a collateral attack under § 2255. *See United States v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir. 1993) ("Many cases have held that Section 2255 generally may not be employed to relitigate questions which were raised and considered on direct appeal.'"). Thus, the Court will deny relief on Ground 2(d).

      6.    *Ground 2(e): Counsel failed to file a motion to suppress evidence obtained from the search of Tutis' residence*

      a.    *The parties' arguments*

Tutis contends there was no evidence that his residence was used in any way for illegal drug transactions, and no controlled substances were found. (Petition at 6(e)). A firearm was seized and used to enhance Tutis' sentence under 18 U.S.C. § 924(c). (*Id.*) Tutis argues his counsel provided ineffective assistance by failing to file a motion to suppress evidence seized upon the search. (*Id.*)

The Government argues that because there was sufficient evidence in the affidavit in support of the search warrant, counsel's failure to file a motion to suppress evidence was not constitutionally deficient performance. (Answer at 25-26.) In reply, Tutis argues the affidavit in support of the search warrant did not support a belief that the residence served as a storage for controlled substances, or that illegal drug transactions had occurred at the residence. (Reply to Answer at 18.) Tutis contends the affidavit ignored the fact that he was engaged in legitimate

business activities and property rentals.  (*Id.*)  Furthermore, Tutis submits that law enforcement officers expanded the search beyond the four corners of the search warrant by seizing jewelry, automobiles, computers, watches, and United States currency without finding any controlled substances or evidence of drug trafficking in the residence.  (*Id.* at 18-19.)

> b.    *Analysis*

"When the crime under investigation is drug distribution, a magistrate may find probable cause to search the target's residence even without direct evidence that contraband will be found there." *United States v. Williams*, 974 F.3d 320, 351 (3d Cir. 2020).  "[W]hen a suspect is involved in drug trafficking, on a significant scale or for an extended period of time, it is reasonable to infer that he would store evidence of that illicit activity in his home." *Id.*  The affidavit in support of the search warrant of Tutis' residence met that standard.

The affidavit is more than 70-pages long and provides evidence linking Tutis to an extensive drug-trafficking conspiracy, including  evidence of long-standing drug trafficking relationships between the alleged coconspirators, recorded conversations from multiple wiretaps, surveillance, confidential sources, controlled purchases, and search and seizures.  ("Affidavit" Dkt. No. 12-2.)  Apart from the evidence linking Tutis to an extensive drug trafficking conspiracy, a summary of the evidence in the affidavit establishing probable cause specific to Tutis' residence includes:  (1) two occasions where law enforcement observed packages of drugs from California taken to Tutis' residence; (2) bank accounts connected to the conspiracy with Tutis'

residence as the address, with cash deposits into and out of multiple accounts under $10,000 to avoid filing a Currency Transaction Report; and (3) law enforcement intercepted a package of $70,000 in cash that had been sent from the residence. (Affidavit at 85-88.)  Finally, the affidavit provides for seizure of, among other things, controlled substances and drug paraphernalia, firearms, cell phones, identification documents, records of the businesses or properties owned by Tutis or Vega, financial data and records, where in excess of $1,000 value, currency, jewelry, gift cards and financial instruments.  (Affidavit, Attach. B.)  Computers and other data storage devices and physical keys needed to gain access to storage devices could be seized in order to search for items listed in the warrant.  *Id.*  The items seized, firearms, $62,084.13 cash, a digital scale disguised as a cell phone and other drug paraphernalia, and documents pertaining to drug trafficking and money laundering, were identified as items to be seized.  (Affidavit at 5-7; PSR ¶ 67.)

It was within counsel's sound professional judgment not to file a motion to suppress evidence obtained as a result of Tutis' residence because the motion was likely to fail.  Therefore, the Court denies relief on Ground 2(e).

### D.    Ground 3

For his third ground for relief, Tutis asserts defense counsel provided ineffective assistance at the sentencing phase.  (Am. Mot. to Vacate at 8.)  The Court will address each subpart of the claim below.

> 1.    *Ground 3(a):  Counsel failed to employ amendments made by the First Step Act to the statute governing his sentence to lower his sentencing exposure.*

33

Tutis states that he was sentenced after passage of the First Step Act of 2018, which changed the mandatory maximum and minimum penalties for drug conspiracy, and his counsel failed to bring this to the Court's attention at sentencing.  (*Id.* at 8(f)).  The Government maintains that Tutis is wrong, the First Step Act did not affect the mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A) (10 years).  (Answer at 35.)  Additionally, the First Step Act did not change the base offense level.  (*Id.*)  Furthermore, the First Step Act does not bar sentence enhancement based on the firearm found in Tutis' residence.  (*Id.*)

The Government is correct, the First Step Act did not change Tutis' sentencing exposure.  "Section 404 of the First Step Act excludes from eligibility defendants whose sentences previously were imposed in accordance with the Fair Sentencing Act."  *United States v. Goodwin*, 37 F.4th 948, 949 (4th Cir. 2022).  Where a defendant is convicted and sentenced after the Fair Sentencing Act of 2010, which altered the penalties for crack cocaine offenses, the defendant is not eligible for relief under the First Step Act because the lower penalties were already applied.  *See id.* at 953 (noting "the newly lowered penalty range for crack cocaine was subsumed in [this] case by the higher statutory minimum attached to the cocaine powder.")  Tutis was sentenced on May 1, 2019, long after passage of the Fair Sentencing Act and, therefore, was ineligible for reductions under the First Step Act.  PSR ¶ 156.

Tutis' sentence enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1) was also unaffected by the First Step Act.  The First Step Act amended

the statutory penalty under 18 U.S.C. § 924(c), not a sentence enhancement under the Guidelines. *United States v. Andrews*, 12 F.4th 255, 257 (3d Cir. 2021) (discussing amendment to penalties for convictions under § 924(c)). Tutis was not convicted for an offense under § 924(c). There was no basis for his counsel to object to nonapplication of the First Step Act in imposing his sentence. The Court will deny relief under Ground 3(a).

       2.      *Ground 3(b):  Counsel failed to object to the aggregation of quantities from different drug transactions to determine the base offense level.*

       (a)      *The parties' arguments*

Tutis contends his sentencing counsel's performance was constitutionally deficient because counsel failed to object to the aggregated drug quantities at sentencing based on: (1) the Government's burden to prove the defendant intended to possess the threshold amount at a given time for a mandatory sentence to apply (citing *United States v. Rowe*, 919 F.3d 752 (3d Cir. 2019); (2) a district court may not simply adopt the drug quantity set forth in the PSR; and (3) Tutis never admitted to all of the Government's factual allegations and conclusions in the PSR. (Am. Mot. to Vacate at 8(a)-(c)).

The Government submits that Tutis agreed to the drug amount in his plea agreement and counsel does not render ineffective assistance by following the plea agreement. (Answer at 30.) Furthermore, on the conspiracy charge, the Government only had to prove drug quantity by preponderance of the evidence, a point that Tutis acknowledged at sentencing when he withdrew his objection. (*Id.* at 30-31.)

Additionally, the Government provided a robust proffer at sentencing. (*Id.* at 31, citing Sentencing Tr. at 6-17).

> b.    *Analysis*

"To calculate the amount of drugs attributable to a given defendant," in a drug trafficking conspiracy case, "district courts look to the defendant's 'relevant conduct.'" *United States v. Parnell*, 652 F. App'x 117, 120 (3d Cir. 2016) (quoting *United States v. Perez*, 280 F.3d 318, 352 (3d Cir. 2002). Relevant conduct in conspiracy cases "includes 'all acts ... of others that were (i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity.'" *Id.* (quoting U.S.S.G. § 1B1.3(a)(1)(B)).

Tutis' reliance on *Rowe* to establish the Government failed to prove the threshold drug weight at a given time is misplaced. Rowe was convicted by a jury of distribution and possession with intent to distribute 1000 grams of heroin. 919 F.3d at 756. He was not charged with conspiracy nor did he plead guilty. *Id.* Therefore, a jury was required to prove beyond a reasonable doubt a single act of drug distribution, at a particular time, of the drug weight charged. *Id.*

Here, the Government met its burden, by a preponderance of the evidence, that Tutis intended to possess the drug amount charged in the conspiracy count based on the Court's acceptance of the plea agreement and the Government's proffer of the drug amount at sentencing, which the Court found to establish more than the necessary drug quantities. (Plea Agreement, Schedule A; Sentencing Tr. at 18.) *See*, *e.g.*,

36

*Concepcion v. United States*, No. CV 18-9258 (MCA), 2021 WL 2177507, at *4 (D.N.J. May 28, 2021) (quoting *United States v. Broce*, 488 U.S. 563, 569-74 (1989) ("A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt[.]"))  The Court did not merely accept the drug weights found in the PSR, and Tutis was not required to plead guilty to all facts alleged in the PSR for the Court to establish the drug weights by a preponderance of the evidence.  Thus, sentencing counsel did not provide ineffective assistance by failing to challenge the drug quantities.  The Court will deny relief on Ground 3(b).

> 3.  *Ground 3*(c):  *Counsel failed to argue against enhancement of the base offense level for a firearm seized in the search of Tutis' residence*

In support of this claim, Tutis argues his counsel failed to challenge the § 924 (c) enhancement of his sentence on the basis that proximity of the firearm to drug trafficking activity was insufficient to sustain an enhancement.  (Am. Mot. to Vacate at 8(d)).  Tutis also asserts that, under current law, a conspiracy offense may no longer be enhanced by a conviction under 18 U.S.C. § 924(c), "so that enhancement must be eliminated."  (Am. Mot. to Vacate at 8(f)).

The Government notes that the two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1), was agreed upon by the parties in the plea agreement.  (Answer at 31.)  Moreover, Tutis did not plead guilty to violation of 18 U.S.C. § 924(c).  (*Id.* at 32, n. 10.)

37

It was clearly within the wide range of professionally competent assistance for sentencing counsel not to argue against a stipulation that the defendant knowingly and voluntarily accepted under oath.  *See*, *e.g.*, *United States v. Snisky*, 725 F. App'x 666, 670 (10th Cir. 2018) (holding reasonable jurists would not debate the denial of an ineffective assistance of counsel claim based on sentencing counsel's failure to dispute sentencing enhancements stipulated to in plea agreement.)  Moreover, Tutis was not sentenced for a conviction under § 924(c).  Therefore, there was no reason for counsel to object.  The Court will deny relief on Ground 3(c).

> 4.    *Ground 3(d):  Counsel failed to challenge the amount of money used to calculate the base offense level for money laundering*

Tutis submits that evidence of money laundering cannot be identical to the evidence used in connection with the underlying offense.  (Am. Mot. to Vacate at 8(d)).  He further argues that his counsel failed to separate the costs of ordinary living expenses and the price paid for the controlled substances and deduct this from the gross profits of the alleged conspiracy.  (*Id.*)  The Government points to the plea agreement, where Tutis agreed the offense level for money laundering was 38.  (Answer at 33).

The Government is correct.  *See Snisky*, 725 F. App'x at 670 (sentencing counsel's failure to dispute sentencing enhancements stipulated to in plea agreement was not ineffective assistance.)  Moreover, Tutis cannot establish prejudice under *Strickland* because the money laundering offense level was irrelevant to the total Guidelines range, where the drug conspiracy offense was used to arrive at the total offense level, and the two counts of conviction were grouped pursuant to U.S.S.G. §

3D1.2(d).  PSR ¶¶ 154-64; *see United States v. Blackmon*, 557 F.3d 113, 120 (3d Cir. 2009) (finding cocaine conspiracy was properly incorporated as relevant conduct under U.S.S.G. § 2S1.1(a) to determine base offense level for money laundering). Counsel's performance was not constitutionally deficient by failing to object to calculation of the base offense level for money laundering.  The Court will deny relief on Ground 3(d).

5.    *Ground 3(e):  Counsel failed to object that the sentence imposed on Tutis was disproportionate to sentences imposed on other similarly situated offenders on a national scale.*

Tutis next claims that his counsel was ineffective because he "registered no objection to the sentence imposed . . . through arguing that it was disproportionate to sentences imposed on other similarly situated of[f]enders on a national scale." (Am. Mot. to Vacate at 8(e)).  In support of this claim, Tutis states that he is the sole defendant in this matter who remains incarcerated for the offenses charged.  (*Id.* at 8(e), (f)).    The  Government  responds  that  Tutis'  below-guidelines  sentence demonstrates that he was treated favorably compared to similarly situated persons. (Answer at 34.) The Government is correct.  Tutis was sentenced to 96-months below the low end of the Guidelines range of 360 months to life calculated in the PSR. (Sentencing Tr. at 146; PSR ¶ 208.)  "[W]ithin-guidelines sentences . . . generally do not lead to disparities" in sentences among similarly situated defendants. *United States v. Kluger*, 722 F.3d 549, 568–69 (3d Cir. 2013).  At sentencing, defense counsel focused on Tutis' demonstrated ability to turn his life around in face of difficult challenges and the  potential  damage  of  a  long  sentence.    (Sentencing  Tr.  at  81-89.)    Counsel's

argument achieved results, Tutis was sentenced to a below-guidelines sentence.  (*Id.* at 146.)  Sentencing counsel acted within the wide range of professionally competent assistance by focusing on factors other than disproportionality.  The Court will deny relief on Ground 3(e).

### E.     Ground 4

Tutis' fourth ground for relief focuses on  his motion to withdraw his guilty plea, in which Farrell appeared as a fact witness.  (Am. Mot. to Vacate at 9.)  Tutis argues his appellate counsel provided ineffective assistance by failing to raise a claim that the trial court errer by not appointing him independent counsel.  *Id.*  The Government responds that Mr. King, not Mr. Farrell, represented Tutis on his motions to withdraw his guilty plea.  (Answer at 7.)

The fourth ground for relief rests on a mistaken factual premise.  Mr. King represented Tutis when Farrell testified in support of Tutis' motion to withdraw his guilty plea.  Crim. No. 14-6919 (Order for Temporary Disqualification, Dkt. No. 432); *Tutis*, 2018 WL 5920623, at *3 n. 1 (D.N.J. Nov. 13, 2018).  Therefore, appellate counsel was not ineffective by failing to raise a factually incorrect claim.  The Court will deny relief on Ground 4.

## III.   First Motion to Supplement Amended Motion to Vacate

Tutis seeks to supplement his amended motion to vacate with four new claims: (1) sentencing counsel was ineffective by failing to object to an incorrect version of Sentencing Guidelines in the PSR; (2) sentencing counsel was ineffective by failing to object regarding the applicable statutory penalties; (3) sentencing counsel was

ineffective by failing to object to application of the career offender enhancement; and
(4) sentencing counsel was ineffective by failing to raise arguments regarding
sentencing disparities between himself and his codefendants.    Because the
Government responded to the merits of each new claim, the Court will grant the
motion to supplement and reach the merits.

### A.    The Applicable Guidelines Version for Sentencing

#### 1.    *The parties' arguments*

Tutis explains his new claim regarding the version of the Sentencing Guidelines
used by the Probation Office in the PSR:

> The Presentence Report failed to comply with an
> amendment to the Sentencing Guidelines which changed
> the language governing drug quantities.    While the
> indictment in this proceeding charged that the conspiracy to
> distribute and possess with intent to distribute "more than
> five kilograms of cocaine and more than 280 grams of
> cocaine base, and more than one kilogram of heroin", it was
> error for the Presentence Report to interpret this as
> triggering a base offense level of "30".    A reading of
> U.S.S.G. 2D.1.1, restricted the base offense level to no more
> than "28", where it read, at the time of sentencing, as "no
> more than five kilograms of cocaine.    Consequently, five
> kilograms of cocaine falls under a base offense level of "28"
> and not "30".    Defense counsel provided ineffective
> assistance by not advocating for the lower base offense level
> through objecting to the Presentence Report's findings.
> That mistake entered into the calculus for determining the
> sentence for Toye Tutis, and resulted in his being convicted
> of a crime for which he was not indicted.

(First Mot. to Supplement, Dkt. No. 19  at 4-5, citing to *United States v. Ellis*, 868 F.3d
1155, 1169 (10th Cir. 2017)).

Respondent opposes relief on this new claim. First, Tutis does not identify the source for this supposed amendment, nor which Guidelines version he thinks should have applied. (Opp'n to First Mot. to Suppl. at 6, Dkt. No. 23.) Second, the Probation Department used the correct version of the Sentencing Guidelines, 2018, and sentencing counsel did not provide ineffective assistance by failing to object. (*Id.* at 5-6.) Furthermore, the Government represents that the drug weight tables for all potentially relevant versions of the Guidelines (2015, 2016, 2018, 2023) indicate a base offense level of 36 for 150 to 450 kilograms of cocaine, the drug quantity of the conspiracy to which Tutis pled guilty. (*Id.*) Tutis did not address this issue in his reply brief. (Reply, First Mot. to Suppl., Dkt. No. 24.)

2.    *Analysis*

District courts must apply the version of the Guidelines in effect on the date of sentencing, with the exception of where it would create an ex post facto problem or when the amendment is merely a clarification of existing law, neither are applicable here. *United States v. Wise*, 515 F.3d 207, 220 (3d Cir. 2008). The sentencing court applied the 2018 Guidelines Manual, the manual in effect at the time of Tutis' sentencing in May 2019. The next version of the manual was not released until 2021.[5] Therefore, sentencing counsel did not provide ineffective assistance by failing to object to the version of the Guidelines Manual under which he was sentenced.

---

[5] *See* United States Sentencing Commission, Guidelines Archive, available at https://www.ussc.gov/guidelines/archive.

## B.    The Applicable Statutory Penalties

Tutis explains his statutory penalty claims, based on a decision by the Tenth Circuit, *United States v. Ellis*, 868 F.3d 1155 (10th Cir. 2017):

> Just as the sentence in Ellis . . . could not be premised on § 841(b)(1)(A), unless the conspiracy with which he was convicted involved 'at least 280 grams of crack cocaine,' thereby triggering a sentencing range of '10 years to life imprisonment' the sentencing range applicable to Toye Tutis should have been limited to that set forth in § 841(b)(1)(C), because there was no determination as to the quantity of cocaine actually involved in the conspiracy nor was there any proof as to the scope of his agreement with any of the coconspirators.

(First Mot. to Suppl. at 4.)   Tutis concludes that he was sentenced "beyond the statutory maximum penalty for violating 21 U.S.C. § 846, which was a maximum sentence of twenty-years under 21 U.S.C. § 841(b)(1)(C), the default penalty."   (*Id.* at 8.)  The Government responds that Tutis' guilty plea admissions compelled the ten-to-life penalty range on Count One, and his counsel was not ineffective for failing to challenge that penalty range at sentencing.  (Opp'n to First Mot. to Suppl. at 8.)  In his reply brief, Tutis contends the statutory maximum penalty under 21 U.S.C. § 846 and § 841(b)(1)(C) should have been twenty-years because the Court should have found the drug quantity attributable solely to Tutis.  (Reply, First Mot. to Suppl. at 4-7.)

Tutis is incorrect.  In the Third Circuit, "the proper inquiry is to determine the *violations* of § 841(a) within the scope of the conspiracy, or in furtherance of it, that were reasonably foreseeable to the defendant as a natural result of his unlawful agreement. All drug quantities involved therein are attributable to the defendant."

*Williams*, 974 F.3d at 366–67.  Tutis' sentencing satisfied the necessary findings under *Williams*.  Unlike in *Ellis*, Tutis pled guilty and stipulated to a drug amount, more than five kilograms of cocaine, more than 280 grams of cocaine based, and more than one kilogram of heroin, which triggered a statutory penalty of ten years to life under 21 U.S.C. § (b)(1)(A)(ii).  (Plea Agreement at 2; Plea Hearing Tr. at 31; PSR ¶ 156.)  *See Garba v. United States*, Civ. No. 10-4445(MLC), 2014 WL 326099, at *3 (D.N.J. 2014) ("[B]y pleading guilty to conspiracy involving more than 5 kilograms of cocaine as charged in count one of this case, Petitioner became statutorily subject to a sentence between the mandatory minimum of ten years and life imprisonment. Nothing in *Alleyne* changes that result.").  Furthermore, the Government proffered the factual support for the drug quantities involved in the conspiracy, and why Tutis was individually responsible for those quantities. (Sentencing Tr. at 6-17.)  Sentencing counsel did not provide ineffective assistance by failing to object to the applicable statutory penalties applied to Tutis.  Therefore, the Court will deny this claim.

### C.    Career Offender Enhancement

Tutis claims that sentencing counsel provided ineffective assistance by failing to object to the career offender enhancement.  (First Mot. to Suppl. at 8.)  The Government opposes relief because counsel did object to the enhancement, and there was no prejudice from application of the enhancement because it did not affect Tutis' Guidelines range.  (Opp'n to First Mot. to Suppl. at 8-9.)  In his reply brief, pursuant to *United States v. Abreu*, 32 F.4th 271 (3d Cir. 2021), Tutis argues he was ineligible for a career offender sentencing enhancement under U.S.S.G. § 4B1.2(b) because his

conviction for engaging in a drug conspiracy is an inchoate offense.  (Reply, First Mot. to Suppl. at 10-11.)

To begin, the parties agreed to reserve for sentencing the issue of application of the career offender enhancement.  (Plea agreement, Schedule A ¶ 7.)  Furthermore, the Government dismissed "the prospect of an enhanced penalty under 21 U.S.C. § 851 for prior convictions."  *United States v. Tutis*, 2019 WL 1894792, at *1 (D.N.J. Apr. 26, 2019).  Moreover, the career offender enhancement did not increase the Guidelines range, which was 360 months to life without enhancement.  (Sentencing Tr. at 61-62.)  Thus, Tutis cannot establish the prejudice.  The Court will deny this ground for relief.

### D.    Sentencing Disparities with Coconspirators

Tutis' new claim of ineffective assistance of counsel for failing to raise arguments concerning sentencing disparities focuses on disparities with Tutis' coconspirators rather than nationwide statistics.  (First Mot. to Suppl. at 11.)   Tutis contends his counsel should have argued coconspirators' sentences were premised on different drug types and quantities than Tutis, and none of the coconspirators remain imprisoned.  (*Id.*)  The Government opposes relief because, as the leader of the drug trafficking organization, Tutis properly received a harsher sentence.  (Opp'n to First Mot. to Suppl. at 10.)

In his challenge to the disproportionate sentences between himself and his coconspirators, Tutis "bears the burden of demonstrating similarity by showing that other defendants' circumstances exactly paralleled his, and a court should not consider sentences imposed on defendants in other cases in the absence of such a showing by a

party." *United States v. Lacerda*, 958 F.3d 196, 215 (3d Cir. 2020) (citation modified). Tutis has not made this demonstration, nor can he because, unlike his coconspirators, he was subject to an enhanced sentence under U.S.S.G. § 3B1.1 as a leader of the drug trafficking conspiracy. (Sentencing Tr. at 34-36.) Thus, counsel was not ineffective by failing to raise a meritless claim. *See Strickland*, 466 U.S. at 699 (holding sentencing counsel performed within the wide range of reasonable professional judgment by not raising arguments that were unlikely to succeed). The Court will deny this ground for relief.

## IV.    SECOND MOTION TO SUPPLEMENT AMENDED MOTION TO VACATE

In his second motion to supplement his amended motion to vacate Tutis contends his prior convictions for drug offenses may not be used as predicates for the career offender enhancement because his state offenses of conviction included more controlled substances than the generic substances listed in the federal statute. (Second Mot. to Suppl. at 1-4, Dkt. No. 25.) He further contends that because his conviction for conspiracy under 21 U.S.C. § 846 is an inchoate offense, it is not a controlled substance offense that is subject to enhancement under U.S.S.G. § 4B1.1. (*Id.* at 3-4.) Under current law, Tutis submits that he would be serving a sentence of 151 months, not 264 months.[6] (*Id.* at 4.)

---

[6] Tutis also reiterated his claim that "[t]here existed no proof that Toye Tutis, or any co-conspirator possessed, or conspired to possess, on a single occasion, a quantity of cocaine that equal[]ed five kilograms or more of cocaine." (Second Mot. to Suppl. at 5, Dkt. No. 25.) The Court addressed this same claim raised in Tutis' first motion to supplement his amended motion to vacate.

The Government argues that Tutis is foreclosed from raising this trial court error Claim under § 2255.   (Opp'n to Second Mot. to Suppl. at 1-2, Dkt. No. 26.) Additionally, the Government maintains that Tutis' convictions for distribution of cocaine are controlled substance offenses as defined in the Guidelines.  (*Id.* at 1.)  In his reply brief, Tutis asserts that the trial court error claim was not corrected at sentencing due to the ineffective assistance of counsel, and the error resulted for an increase in the default penalty of 20-years.  (Reply, Second Mot. to Suppl., Dkt. No 28.)

Tutis cannot establish *Strickland* prejudice from application of the career offender enhancement because it did not increase his Guidelines range of 360-months to life.  Therefore, Tutis is not entitled to relief on this claim.

## V.    AN EVIDENTIARY HEARING IS NOT REQUIRED

An evidentiary hearing under 28 U.S.C. § 2255 is unnecessary when the "files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Padilla-Castro*, 426 F. App'x 60, 63–64 (3d Cir. 2011) (quoting 28 U.S.C. § 2255(b)).  As discussed above, with respect to each claim raised by Tutis, the records in this case leave no room for doubt that Tutis is not entitled to relief from his conviction and sentence.  Therefore, an evidentiary hearing was not required.

## VI.    CERTIFICATE OF APPEALABILITY

A certificate of appealability ("COA") is required for a defendant to appeal a final order denying a motion under 28 U.S.C. § 2255.  *Clark v. United States*, 76 F.4th

206, 210 (3d Cir. 2023), *cert. denied*, 144 S. Ct. 1382 (2024) (citing 28 U.S.C. § 2253(c)(1)(B)).  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.. § 2253(c)(2).  Substantial in this context means "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citation modified).  Tutis has not made such a showing as to any of the claims he raised.  Thus, the Court will not issue a COA.

## VII.  CONCLUSION

The records of Tutis' criminal conviction and sentence contravene his claims of ineffective assistance of counsel and trial court error in his amended motion to vacate, as well as the new claims raised in his two motions to supplement.  Therefore, the Court will deny the amended motion to vacate, as supplemented, and a certificate of appealability shall not issue.  An appropriate Order follows.


Date:  November 20, 2025

                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    Chief United States District Judge